IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MICHAEL H. HARRIS and )
BEVERLY D. HARRIS )
)
    Plaintiffs, ) Case No. 3:11-cv-0412
) Senior Judge Haynes
v. )
)
NATIONWIDE MUTUAL FIRE INS. CO., )
et. al. )
)
    Defendants. )

## MEMORANDUM

Plaintiffs, Michael H. Harris and Beverly D. Harris, Tennessee citizens, filed this action under the National Flood Insurance Act of 1968, Title 42 U.S.C. § 4001, et. seq. ("NFIA") against the Defendants: First American Flood Data Services ("First American"), First American Corporation ("FAC"), First American CoreLogic, Inc. ("FACI"),[1] Nationwide Mutual Fire Insurance Co., David Vandenbergh, Regions Financial Corporation, Regions Bank ("Regions"), AmSouth Bank, George Logan, and Dorothy Logan (collectively, the "Logans"). Plaintiffs' claims arise out of the Nashville area flood that damaged Plaintiffs' residence. Plaintiffs assert federal law claims under the NFIA for breach of the flood insurance contract, improper handling of their flood insurance claims, and underpayment of insurance proceeds. Plaintiffs also assert state law professional negligence claims against Defendant David Vandenbergh.

Before the Court is Defendant Vandenbergh's motion for summary judgment (Docket Entry

---

[1] The complaint refers to this Defendant as "CoreLogic." Yet, it appears that there is a separate entity named "CoreLogic, Inc." To avoid confusion, the acronym "FACI" is used to refer to "First American CoreLogic, Inc."

1

Nos. 126 and 131) contending that, under Tennessee insurance law, Plaintiffs received compensation based on the insurance policy that Plaintiffs assert Defendant Vandenbergh should have provided, and Plaintiffs are not entitled to damages for excess premiums or contents coverage. Plaintiffs filed a response in opposition (Docket Entry No. 134) contending that they are entitled to damages for Defendant's negligent failure to procure insurance.

## A. Findings of Fact[2]

On August 21, 2006, Plaintiffs purchased their residence from Defendants George and Dorothy Logan. The Logans executed a disclosure stating that the property was not in a flood zone. The NFIP Flood Insurance Rate Map ("FIRM") of the area, however, reflects that the property was in a flood zone at the time of Plaintiffs' purchase. According to Plaintiffs, First American provided flood certification information to Regions, their mortgage company, at the closing on their purchase of their residence. (Docket Entry No. 1, Complaint at ¶ 24). Based on the Defendants' flood zone certification, Plaintiffs determined not to buy flood insurance.

On September 20, 2006, the Federal Emergency Management Agency ("FEMA") issued a revised FIRM. Between September 2006 and October 2006, Regions informed Plaintiffs that the residence was now in a flood zone and Plaintiffs had forty-five days to secure flood insurance. After Regions Bank's letter, Plaintiff Michael Harris contacted Defendant Vandenbergh to discuss flood insurance and he asked Defendant Vandenbergh for the "maximum [flood insurance] to cover the

---

[2]  Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). The Court concludes that there are not any material factual disputes. Thus, this section constitutes finding of facts under Fed.R.Civ.P. 56(d).

house and contents." (Docket Entry No. 131-1, Deposition of Michael Harris at 26). According to Plaintiff Michael Harris, he told Defendant Vandenbergh that it was "critically important" to obtain both home and contents flood coverage. Id. at 26-27, 29. Plaintiffs hired Vandenbergh to procure flood insurance for them from Nationwide. Vandenbergh sold Plaintiffs a Nationwide pre-FIRM policy.

Under this policy, Plaintiffs were not required to obtain an elevation certificate to purchase this flood insurance. Due to the Nashville Flood of May 1-2, 2010, Plaintiffs' home flooded and was damaged. The flood adjuster informed Plaintiffs their residence's bottom floor was not covered as a post-FIRM structure. Plaintiffs seek to recover losses they experienced.

Plaintiffs assert that they never received the contents flood coverage they requested Defendant Vandenbergh to provide. Defendant Vandenbergh states that Plaintiffs were fully aware that they did not have contents coverage for years before the flood, and never instructed him to alter their coverage.

Plaintiff Michael Harris acknowledges that he did not receive or review a flood policy or declaration page until 2008 and that he never asked for copies of his policies or declaration pages prior to 2008. Id. at 30, 32-35. After receiving the flood insurance declaration page, Plaintiff Michael Harris knew that he had an opportunity to change the amount of contents coverage, but "chose not to change coverage." Id. at 86-87. Plaintiff Michael Harris received other declaration of value coverage before the May 2010 flood. (Docket Entry No. 131-2, Exhibits to Deposition of Michael Harris, Exhibits 11-16). After approximately 16 inches of water flooded the lower level of their home, Plaintiffs were informed that their home had less flood insurance than they thought.

Plaintiffs cite their policy, which lists their residence as "pre-FIRM" construction, but assert

that the proper designation is "post-FIRM" construction, requiring an elevation certificate that would enable them to purchase supplemental insurance or make the property more easily insurable. Id. at Exhibit 2; Docket Entry No. 131-5, Plaintiffs' Answers to Defendant Vandenbergh's Interrogatory No. 13. Plaintiffs also seek to recover the increased premiums paid based upon the wrong construction date of the home.

Additionally, Plaintiffs assert Defendant Vandenbergh's negligence resulted "in non-covered damage to [their] personal property," yielding uncovered losses due to the lack of contents coverage.

In assessing flood risk, the Federal Insurance Administrator issues a Flood Insurance Rate Map ("FIRM"), that "delineate[s] both the special hazard areas and the risk premium zones applicable to the community." 44 C.F.R. § 59.1. A building is designated "pre-FIRM" or "post-FIRM" based upon when the building was constructed or substantially improved. 44 C.F.R. Part 61, App. A(1), ¶ B23. Pre-FIRM structures include buildings constructed or improved prior to the effective date of the local FIRM for a particular community, and post-FIRM structures were built or improved after the effective date of the local FIRM. The FIRM for Gallatin, Tennessee was issued on August 3, 1981, and the Harris's home was built in 1984. Thus, the Harris' home is a "post-FIRM" structure under the express terms of the Standard Flood Insurance Policy ("SFIP"). Id.

Pre- and post-FIRM designation affects the scope of coverage. For post-FIRM structures, items "below the lowest elevated floor" are generally not covered losses. Pre-FIRM structures are eligible for more extensive coverage for the first, non-elevated floor of the structure. 44 C.F.R. Part 61, App. A(1).

In the fall of 2010, FEMA confirmed that the Plaintiffs' home "is classified as post-FIRM," and that "damaged building and property items are subject to the coverage limitations outlined in the

SFIP, Section III, Coverage A – Building Property, 8a and b, and Section III, Coverage B – Personal Property, 3a through c." (Docket Entry No. 131-7, FEMA Letter at 1).

It is undisputed that Plaintiffs' residence is a post-FIRM structure and that Plaintiffs' flood claim was adjusted according to post-FIRM SFIP criteria. (Docket Entry No. 131-1, Deposition of Michael at 48-49, 149; Docket Entry No. 131-7, FEMA Letter).

Plaintiff Michael Harris admitted that he suffered no coverage-related loss as a result of any misidentification of the house as pre-FIRM:

> Q: Assuming somebody had done their homework and had identified your home on the insurance policy as a post-FIRM structure, I take it that you would have gotten the post-FIRM coverage that you're entitled to, correct?
>
> A: Correct.
>
> Q: And, in fact, my understanding is that when Nationwide adjusted your claim, they adjusted it as a post-FIRM structure, right?
>
> A: Correct.
>
> Q: So this pre-FIRM/post-FIRM . . . distinction or that error that you talked about was sort of no harm, no foul?
>
> A: Well, the house was going to be covered as it was. I understand that.

(Docket Entry No. 131-1, Deposition of Michael at 48-49).

As to his additional steps after the flood to protect his home against the risks of flood, Plaintiff Michael Harris testified:

> "I will continue to have flood insurance. . . and explore the possibilities, if we can, of being able to insure the whole building [which includes] the lower level, which is not covered on the post-FIRM [policy]."

Id. at 111-12.

Plaintiff Michael Harris also did not identify any "private" or "supplemental" insurance

5

secured after the flood. Id. at 51-53, 94-95. Plaintiffs were told that "the only coverage available was through the normal FEMA coverage," and Plaintiffs could not find a policy different from the government policy. Id. at 51-52.

Don C. Kotter, Plaintiffs' expert adjuster/estimator, opines that "the plaintiffs could have procured private flood insurance to insure the risk at issue." (Docket Entry No. 131-9, November 8, 2013 Independent Adjuster/Estimator Expert Report). The Chubb Personal Flood Insurance material cited in Kotter's Report reflects that "[a]ctual coverage is subject to the language of the policies as issued. Coverage may not be available in all jurisdictions." Id. at 18. Kotter did not specify whether Plaintiffs could have been covered under these particular circumstances.

As to the flood policy declaration on February 21, 2010, three months before the flood, Plaintiff testified:

> Q: And as you're looking at [Ex. 16], I'll direct your attention to the date under "Insured Copy," which is 2/21/2010. Do you see that?
>
> A: Yes.
>
> Q: Can you tell me what this is?
>
> A: That's the declaration page from 12/29/2009 to 12/29/2010.
>
> Q: Okay. And you received this document?
>
> A: Yes.
>
> . . .
>
> Q: This also shows there is no contents coverage, right?
>
> A: Yes.
>
> Q: You elected not to make any changes to your policy at this point in time, correct?

A: Evidently, yes.

Q: And you didn't tell Mr. Vandenbergh about any discrepancies in this policy, correct?

A: No.

(Docket Entry No. 131-1, Deposition of Michael Harris at 91-92). At least as early as 2008, Dr. Harris knew that he did not have contents coverage, but did not rectify the omission. Id. at 75-77.

Plaintiff Michael Harris testified that his wife assembled the documents to support their damage claims, and that "she would probably have more [knowledge] than I" regarding the specifics of those documents. Id. at 117. He was unable to identify a specific document to support the items potentially covered under a contents policy:

Q: Did you have a washer or dryer on the first floor that was damaged?

A: Yes.

Q: Would I find a reference to those in the documents we just went through?

A: There would be an itemized list of that somewhere.

Q: Okay. So you're not remembering specifically, but your wife would remember?

A: Yes.

Q: Okay. Did you have a freezer on the first floor?

A: No, not at that time.

Id. at 130-31.

Plaintiff Beverly Harris testified that there was a refrigerator on the first floor, but had no evidence proving that it was replaced:

Q: Do you have receipts or invoices to reflect where the refrigerator was

> replaced from . . .?
>
> A: I wouldn't know without going back and searching through my records.
>
> Q: As we sit here today, is it fair to say that you don't have documentation showing where the . . . refrigerator was replaced? Is that fair?
>
> A: To say that I don't have them?
>
> Q: Don't have receipts or documents to show where they were purchased or –
>
> A: I don't here today, no.
>
> Q: Right.
>
> A: But do I have them? I would have to look.

(Docket Entry No. 131-8, Deposition of Beverly Harris at 51).

Finally, Plaintiffs contend that they are entitled to damages for excess premiums paid as a result of the pre-FIRM designation. Plaintiffs' pre-flood/pre-FIRM premiums of $1,110.00 for 2007-2008 and $1,241.00 for 2008-2009 decreased to post-flood/post-FIRM premiums of $594.00 for 2011-2012 and $534.00 for 2012-2013. (Docket Entry Nos. 126-2 and 126-3).

## B. Conclusions of Law

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex</u>, 477 U.S. at 326. Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989). <u>But see Routman</u>, 873 F.2d at 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in <u>Celotex</u>:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and] . . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'")(quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.</u>
>
> . . .
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> [I]n ruling on a motion for summary judgment, the court must

> construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d. 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). In this district, the parties must provide specific references to the proof upon which they rely. See Local Rule 56.01(c) requiring each

party to provide a statement of undisputed facts to which the opposing party must respond.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'
>
> 6. As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.
>
> 7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.
>
> 8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

> 9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
>
> 10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

Under Tennessee law, "courts have consistently recognized the right to recover damages based on an agent's wrongful failure to procure insurance as authorized or directed." Morrison v. Allen, 338 S.W.3d 417, 426 (Tenn. 2011). "A cause of action for failure to procure insurance is separate and distinct from any cause of action against an insurer or a proposed insurer." Id. Thus, successful plaintiffs are entitled to the difference between the coverage the plaintiff received and the coverage the plaintiff should have received. See 3 Steven Plitt et al., Couch on Insurance § 46:74 (3d rev. ed. 2014) (hereinafter "Couch on Insurance") ("The proper measure of damages in an action against an agent for failure to procure insurance is the amount that would have been due under the

policy if it had been obtained . . ." (citations omitted)); see also Glisson v. Stone, 4 Tenn. Ct. App. 71, 75 (1926) ("Negligence on the part of the agent [for failure to procure] . . . will render him liable to his principal for the resulting loss.").

Regarding the allegedly negligent procurement of a pre-FIRM insurance policy, Defendant Vandenbergh listed a construction date of the Plaintiffs' home that invoked a pre-FIRM policy, but Plaintiffs were entitled to a post-FIRM adjustment of their claim. Yet, FEMA confirmed that Nationwide adjusted the Harris' dwelling claim as if they had received post-FIRM coverage. (Docket Entry No. 131-7, FEMA Letter at 1). Thus, the Court agrees that Plaintiffs were provided with the coverage that could have been collected from the insurer had such insurance been obtained. Accordingly, there are no damages attributable to this claim.

Plaintiffs also contend that Defendant Vandenbergh failed to properly advise Plaintiffs to obtain an elevation certificate or supplemental insurance, or attempt construction that would have alleviated or reduced the risk of flooding or made the property more easily insurable. Yet, constructing an "earthen berm" is not a compensable damage for a failure to procure an insurance policy, as it is not an amount that would have been due under the policy had it been obtained. See Couch on Insurance § 46:74. Further, Plaintiff Michael Harris did not testify that, after the flood, he investigated the viability of an earthen berm. (Docket Entry No. 131-1, Deposition of Michael Harris at 111-12). The extent to which Plaintiffs would or could have constructed an earthen berm, or procured private insurance, is mere speculation and is insufficient to merit an award of damages. See Maple Manor Hotel, Inc. v. Metropolitan Gov't of Nashville & Davidson Cnty., 543 S.W.2d 593, 599 (Tenn. Ct. App. 1975) ("The rule . . . in actions of tort, is that uncertain, contingent, or speculative damages may not be recovered.").

Regarding contents coverage, Defendant Vandenbergh first argues that Plaintiffs acquiesced on their policy change, and did not request a coverage change prior to the May 2010 flood.

Under Tennessee law, acquiescence is "conduct from which may be inferred an assent," or a "person's tacit or passive acceptance, or an implied consent to an act." Keith v. Jackson, 2013 WL 672491, *5 (Tenn. Ct. App. 2013). Acquiescence arises "where a person knows or ought to know that he or she is entitled to enforce his or her right to impeach a transaction and neglects to do so for such a time as would imply that he or she intended to waive or abandon his or her right." Id. (quoting 31 C.J.S. Estoppel and Waiver § 175 (2008)). If a plaintiff acquiesces to a particular contractual arrangement, that plaintiff cannot later challenge the arrangement or term. See Russell v. GTE Gov't Sys. Corp., 141 Fed. Appx. 429, 434-35 (6th Cir. 2005).

Here, the insurance policy that Defendant Vandenbergh procured did not include the contents coverage that Plaintiffs allegedly requested. Yet, the mere absence of the requested contents coverage does not create a right, under the terms of the insurance policy, that Plaintiffs were entitled to enforce. As such, Plaintiffs had no right to contents coverage, and, therefore, could not subsequently acquiesce to a lack of contents coverage.

Defendant also contends that Tenn. Code Ann. § 56-7-135 creates "a rebuttable presumption that the coverage provided has been accepted by all insureds under the contract." The statute, in its entirety, reads:

> (a) The signature of an applicant for or party to an insurance contract on an application, amendment, or other document stating the type, amount, or terms and conditions of coverage, shall create a rebuttable presumption that the statements provided by the person bind all insureds under the contract and that the person signing such document has read, understands, and accepts the contents of such document.

> (b) The payment of premium for an insurance contract, or amendment thereto, by an insured shall create a rebuttable presumption that the coverage provided has been accepted by all insureds under the contract.

Tenn. Code Ann. § 56-7-135.

The Court notes that this action was filed prior to the enactment of T.C.A. § 56-7-135.[3] "[S]tatutes are presumed to operate prospectively unless the legislature clearly indicates otherwise." In re D.A.H., 142 S.W.3d 267, 273 (Tenn. 2004) (citing Nutt v. Champion Int'l Corp., 980 S.W.2d 365, 368 (Tenn. 1998). Yet, "[s]tatutes deemed remedial or procedural apply retrospectively to causes of action arising before such acts became law and to suits pending when the legislation took effect." Id. A procedural statute "does not affect the vested rights or liabilities of the parties." Id. Rather, it "addresses the mode or proceeding by which a legal right is enforced." Id..

T.C.A. § 56-7-135 serves as a burden-shifting statute. It creates a rebuttable presumption that, by paying the insurance premium, an insured has accepted the coverage provided under the contract. The statute does not affect the vested right of an insured to bring a claim for negligent procurement of insurance. Rather, it addresses the mode or proceeding by which such claims are brought. See Todd v. Shelby County, 407 S.W.3d 212, 221 (Tenn. Ct. App. 2012) (concluding that a burden-shifting amendment to T.C.A. § 50-1-304(g) was procedural in nature and, therefore, applied retrospectively to that action). Accordingly, the Court concludes that T.C.A. § 56-7-135 is procedural

---

[3] The Court also notes that, to date, it does not appear that any Tennessee Appellate Court has addressed the interaction of T.C.A. § 56-7-135 with the Tennessee Supreme Court's holding in Allstate Insurance Co. v. Tarrant, 363 S.W.3d 508, 521 (2012) (holding that "[u]nder these circumstances, Allstate is estopped from denying coverage, notwithstanding Mr. Tarrant's failure to discover the error from the mailings he received . . . To hold otherwise would place the burden on the insured to discover and protect himself or herself from mistakes of the insurer's agent and relieve the insurer from any responsibility for the errors of its agent.").

in nature and applies retrospectively to this action.

Here, it is undisputed that Plaintiffs paid their insurance premiums for at least three years prior to the May 2010 flood. Docket Entry No. 131-1, Deposition of Michael Harris at 33 ("I was billed for it, saw where it was paid for in that amount[.]"), 35-36 (confirming Plaintiffs renewed flood coverage prior to flood and coverage was "in place before the flood"). Thus, there is a rebuttable presumption that Plaintiffs accepted the terms of their flood policy and its declaration pages, including the lack of contents coverage.

Moreover, Plaintiff Michael Harris specifically stated that, in about January 2010, Plaintiffs received declaration pages showing they had no contents coverage at the Property for policy period December 29, 2009 to December 29, 2010, which was the period "covering the flood year." Docket Entry No. 131-1, Deposition of Michael Harris at 87-90. Plaintiff Michael Harris also confirmed that "prior to May 2, 2010, for the 2010 year, [he] had also received a copy of [Plaintiffs'] flood insurance policy and . . . declaration pages[.]" Id. at 37. In total, Plaintiff Michael Harris received at least eight copies of the flood policy, declaration pages, and/or renewal notices reflecting that he did not have contents coverage on his home. Docket Entry No. 134-1, Plaintiffs' Response to Defendant Vandenbergh's Statement of Undisputed Facts at ¶ 18. Further, it is undisputed that Plaintiffs "chose not to make any changes to [their] coverage" after they received the declaration pages showing coverage limits for the 2010 policy year. Id. at ¶¶ 14, 16–19; Docket Entry No. 131-1, Deposition of Michael Harris at 90-92.

Under these circumstances, the Court concludes that Plaintiffs have failed to rebut the presumption that, by paying their insurance premiums prior to the flood, they accepted the coverage reflected in the declaration pages, including the lack of contents coverage.

Finally, Plaintiffs contend that they are entitled to damages for excess premiums paid prior to the flood as a result of the pre-FIRM designation. Although Defendant notes that the appropriate measure of damages is the difference between pre-flood/pre-FIRM premiums and pre-flood/post-FIRM premiums, Plaintiffs' pre-flood/pre-FIRM and post-flood/post-FIRM premiums (Docket Entry Nos. 126-2 and 126-3) reflect a significant difference in the premiums charged. Thus, a genuine issue of material fact exists as to whether Plaintiffs are entitled to damages for excess premiums paid as a result of the improper pre-FIRM designation.

Accordingly, the Court concludes that Defendant's motion for summary judgment (Docket Entry Nos. 126 and 131) is denied as to Plaintiffs' claims for excess premiums, but granted on all other grounds.

An appropriate Order is filed herewith.

**ENTERED** this the ___ day of February, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge