UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL H. HARRIS and BEVERLY D. HARRIS, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| NATIONWIDE MUTUAL FIRE INS. CO., DAVID W. VANDENBERGH, FIRST AMERICAN FLOOD DATA SERVICES, FIRST AMERICAN CORPORATION, FIRST AMERICAN CORELOGIC, INC., REGIONS BANK, AMSOUTH BANK, N.A., GEORGE V. LOGAN and DOROTHY A. LOGAN, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 3:11-cv-00412
Judge Aleta A. Trauger

## MEMORANDUM AND ORDER

Pending before the court is a Motion for Leave to Amend (Docket No. 168), filed by the plaintiffs, Michael and Beverly Harris. Defendants Regions Financial Corporation and Regions Bank, as successor by merger to AmSouth Bank, N.A. (collectively "Regions") have filed a Response in opposition (Docket No. 169), to which the plaintiffs have filed a Reply (Docket No. 173). Defendants CoreLogic Flood Services, LLC f/k/a First American Flood Data Services, First American Corporation, and First American CoreLogic, Inc. (collectively, "CoreLogic")[1]

---

[1] The negligent misrepresentation claims the plaintiffs have brought against these defendants all emanate from the same instances of alleged corporate negligence in performing a flood zone certification. In their Response, these defendants refer to the entity that performed the flood zone certification as "CoreLogic." (Docket No. 170.) For the purposes of this Memorandum and Order, the court will do the same.

1

have also filed a Response in opposition (Docket No. 170), to which the plaintiffs have filed a Reply (Docket No. 174). For the reasons discussed herein, the motion will be granted in part and denied in part.

## BACKGROUND & PROCEDURAL HISTORY

On August 21, 2006, Michael and Beverly Harris purchased from George and Dorothy Logan a house on the Cumberland River. Pursuant to the National Flood Insurance Act of 1968, 42 U.S.C. 4001 *et seq*. ("NFIA"), buyers securing loans for houses in flood zones are required by lenders to purchase flood insurance. Flood zones are determined by the Federal Emergency Management Agency ("FEMA") and demarcated on Flood Insurance Rate Maps ("FIRMs"). The Harrises had obtained a mortgage through Regions, and, prior to the closing on August 21, 2006, Regions contracted with CoreLogic, a flood certification company, to provide a flood zone determination for the house. The 1981 FIRM in place at the time showed that the house was in a flood zone. But CoreLogic incorrectly determined that the house was not in a flood zone and that flood insurance was thus not required. The Harrises did not purchase flood insurance.

On September 20, 2006, a month after the closing, FEMA issued a revised FIRM. Regions informed the plaintiffs that, pursuant to the revised FIRM, their house was located in a flood zone and that they had forty-five days to secure flood insurance. The plaintiffs hired David Vandenbergh, an insurance agent, to obtain a policy, which he procured from Nationwide Mutual Fire Insurance Company ("Nationwide"). The Harrises were told that their house was a "pre-FIRM" property because it was built before the 1981 FIRM.[2] The practical effect of this determination was that the Harrises were not required, as a precondition to purchasing the policy,

---

[2] The Harrises allege that "Vandenbergh and/or Nationwide and/or [CoreLogic] and/or Regions improperly identified [their] property as pre-FIRM." (Docket No. 1, p. 7.)

to obtain an elevation certificate showing that the house was sufficiently elevated above the base flood zone. In fact, the Harrises' house was built in 1984, making it a "post-FIRM" property that did require an elevation certificate, although the Harrises had no knowledge of this fact at the time of purchasing the flood insurance.

In May 2010, a 1000-year flood struck Tennessee. The Harrises' house was filled with sixteen inches of water. The Harrises filed a claim under their policy with Nationwide but were told that their rating information was incomplete, because their house required an elevation certificate. An elevation analysis was conducted, and a flood adjuster determined that the bottom floor of the Harrises' home was not insured under the policy because it was situated below the base flood-zone elevation. As a result, Nationwide did not cover damages sustained to the bottom floor of the house, including damage to the Harrises' personal property therein.

On May 2, 2011, the plaintiffs filed a Complaint in this court. (Docket No. 1.) CoreLogic filed a Motion to Dismiss (Docket No. 25), which was granted (Docket No. 54). The court held that the common law negligence claims against CoreLogic were precluded by the NFIA. Regions then filed its own Motion to Dismiss (Docket No. Docket No. 60), which also was granted. (Docket No. 80.)[3] On appeal, the Sixth Circuit reversed, issuing a narrow holding that the NFIA did not foreclose state common law claims, without ruling on the merits of the Harrises' claims. (Docket No. 174-1.) Upon remand, the case was assigned to the undersigned judge. On March 22, 2018, the Harrises filed a Motion for Leave to Amend Complaint, which is presently before the court. (Docket No. 168.)

## **LEGAL STANDARD**

---

[3] Both motions to dismiss were granted when this case was assigned to another judge of this court.

3

Federal Rule of Civil Procedure 15(a) governs amending pleadings before trial. A party may amend a pleading once as a matter of course within (a) twenty-one days after serving it, or (b) if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). In all other cases, a party may only amend a pleading by obtaining the opposing party's written consent or receiving leave of the court. Fed. R. Civ. P. 15(a)(2). Where it is requested, "[t]he court should freely give leave when justice so requires." *Id*.

The district court has broad discretion to determine "when justice so requires." *Martin v. Assoc. Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986). A motion to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings. *Rose v. Hartford Underwriters Ins. Co*., 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dept. of Treasury, State of Mich., Revenue Div*., 987 F.2d 376, 382–83 (6th Cir. 1993)); *see also Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006) ("A Rule 12(c) motion for judgment on the pleadings for failure to state a claim upon which relief can be granted is nearly identical to that employed under a Rule 12(b)(6) motion to dismiss."). Stated differently, allowing an amendment that would subsequently be dismissed under a Rule 12(b)(6) motion or a Rule 12(c) motion for judgment on the pleadings does not serve the interests of justice.

## ANALYSIS

**1. Claims against CoreLogic**

The plaintiffs bring a claim of negligent misrepresentation under Tennessee law against CoreLogic. The thrust of their claim is that CoreLogic was negligent in its initial determination that the house was not in a flood zone, where flood insurance was required, and that they were damaged by CoreLogic's negligent determination because they would not have purchased the house, had they known it was in a flood zone.

Tennessee has adopted Section 552 of the *Restatement (Second) of Torts* "as the guiding principle in negligent misrepresentation actions against other professionals and business persons." *Bethlehem Steel Corp. v. Ernst & Whinney*, 822 S.W.2d 592, 595 (Tenn. 1991). The Tennessee Supreme Court, in discussing the requirements for recovery under Section 552, has held that liability for negligent misrepresentation will result, despite a lack of contractual privity between a plaintiff and defendant, when:

> 1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and
>
> 2) the defendant supplies faulty information *meant to guide others in their business transactions*; and
>
> 3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and
>
> 4) the plaintiff justifiably relies upon the information.

*Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997) (emphasis in original). In delineating liability, the Tennessee Supreme Court has looked to Subsection (2) of Section 522, which states:

> Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*See Bethlehem Steel Corp.*, 822 S.W.2d at 595. In *Bethlehem Steel Corp.*, the Tennessee Supreme Court cited Comment (h) of the Restatement in analyzing Subsection (2), emphasizing in relevant part the following passage:

> It is enough that the maker of the representation intends it to reach and influence either a particular person or persons, known to him, or a group or class of persons, distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it. *It is enough, likewise, that the maker of the representation knows that his recipient intends to transmit the information to a similar person, persons, or group.*

*Id.* (emphasis in original).

Applying these principles, the *Bethlehem Steel Corp.* court found that the defendant, a national accounting firm, was liable for negligent misrepresentation to a manufacturer who relied to its detriment on an audit report prepared by the defendant in extending credit to a customer. *See id.* at 596 ("[L]iability is limited to those persons or classes of persons, as determined by current business practices and the particular factual situation, whom the accountant at the time the report is published should reasonably expect to receive and rely on the information."). This approach is in accord with other decisions by Tennessee courts. *See, e.g.*, *John Martin Co., Inc. v. MorselDiesel, Inc.*, 819 S.W.2d 428 (Tenn. 1991) (construction manager liable to subcontractor, despite lack of privity, where manager negligently supplied information upon which subcontractor relied in performing work at construction site); *Tartera v. Palumbo*, 453 S.W.2d 780 (Tenn. 1970) (land surveyor hired by purchaser liable to seller for negligently

prepared plat, where surveyor knew plat would be used to describe property in warranty deed that would be relied upon by both purchaser and seller).

CoreLogic argues that the proposed amendments are futile because the flood zone determination was not prepared for the Harrises' benefit and thus, as a matter of law, CoreLogic cannot be liable for negligent misrepresentation. The court disagrees. As amended, the Complaint sets forth allegations that CoreLogic supplied faulty information that it knew the plaintiffs might rely upon in deciding whether or not to purchase their house. As the plaintiffs note, CoreLogic knew that the reason it was contracted to perform the flood zone determination in the first place was because of the plaintiffs' interest in purchasing the property. Although the determination was conducted at the behest of Regions, CoreLogic knew that the information it provided would be transmitted to the Harrises, who might then reasonably rely upon it in the commercial transaction of purchasing the home. Under the Restatement approach endorsed by the Tennessee Supreme Court, the plaintiffs' allegations would sufficiently establish a negligent misrepresentation claim if proven at trial. The Complaint, as amended, states a claim upon which relief could be granted and, therefore, would survive a 12(b)(6) motion to dismiss. Given the liberal policy in favor of allowing amendment, the court will therefore grant the plaintiffs' motion with regard its claims against CoreLogic.

### 2. Claims against Regions

The plaintiffs bring claims for negligence, negligent misrepresentation, breach of contract, and breach of the covenant of good faith against Regions. The amendments identify the Deed of Trust and Note as the bases for their breach of contract and covenant of good faith claims, add factual heft to their negligent misrepresentation claim, and offer a new theory of negligence based on Regions' alleged failure to procure force-placed insurance.

7

Regions first argues that the proposed amendments are unduly delayed, given that the Harrises filed their initial Complaint over seven years ago, and the Sixth Circuit issued its ruling on appeal nearly two years ago. "Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Coe v. Bell*, 161 F.3d 320, 341–42 (6th Cir. 1998) (quoting *Brooke v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994). Regions does not argue that they have been prejudiced in any way by the plaintiffs' delay in attempting to amend their Complaint. Instead, they contend that "[t]his case has entirely too much history for Plaintiffs to be permitted to amend their Complaint now." (Docket No. 169, p. 3.) The Sixth Circuit requires more. Absent a showing of prejudice, the plaintiffs' delay is insufficient to disallow their amendments.

Regions next argues that the amendments would be futile. Regions contends that the breach of contract and good faith covenant claims are futile because the Complaint, as amended, fails to state a claim. The Complaint, as amended, alleges that:

> Regions breached the Deed of Trust, which makes the Security Instrument subject to federal law and the law of the jurisdiction in which the property is located, the breach of which creates a duty on behalf of Regions which supports Plaintiffs' state law causes of action. In addition, Regions breached the notice requirement of the mortgage agreement by failing to notify Plaintiffs of the inaccuracy of the flood certification report.

With regard to the alleged notice requirement, the plaintiffs fail to identify—and the court fails to see—any provision imposing an actionable legal duty on the part of Regions to notify the plaintiffs of inaccuracies in the flood certification report. The mortgage agreement includes a section entitled "Notices,"[4] but that provision deals with how notice is to be provided, not what

---

[4] "All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to

8

notices Regions is required to provide. Without identifying such a requirement, the plaintiffs cannot state a claim for a breach of contract based on notice. The Complaint, as amended, also seemingly alludes to a broader incorporation of federal and state law, but as Regions notes, the plaintiffs do not point to any specific provision creating a contractual duty not to violate state law. Although the Governing Law section of the Deed of Trust does state that the Deed "shall be governed by federal law and the law of the jurisdiction in which the Property is located" and that "[a]ll rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law" (Docket No. 18-1, p. 11), nowhere does the Deed of Trust enumerate an obligation to comply with state law in performance of the contract. Because the plaintiffs do not identify an obligation in the Deed of Trust that Regions allegedly breached, they cannot state a claim for breach. Their breach of contract and covenant of good faith[5] claims thus could not survive a motion to dismiss, and their Motion to Amend will be denied with regard to their proposed amendments related to those claims.

Regions also contends that the claims for negligence and negligent misrepresentation are futile. Regions first argues that the statute of limitations has run on the plaintiffs' claims. Under

---

Borrower's notice address if sent by other means . . . . If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument." (Docket No. 18-1, p. 10.)

[5] Under Tennessee law, the duty of good faith and fair dealing must be tied to a specific term of a contract, rather than interpreted as creating independent obligations. *See Goot v. Metro Gov't of Nashville & Davidson Cty.*, No. M2003–02013, 2005 WL 3031638, at *7 (Tenn. Ct. App. Nov. 9, 2005) ("The implied obligation of good faith and fair dealing does not, however, create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement."); s*ee also Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc*., 395 S.W.3d 653, 666 (Tenn. Ct. App. Nov. 9, 2005) (holding that the duty of good faith "does not extend beyond the terms of the agreed upon terms of the contract and the reasonable contractual expectation of the parties.") (quoting *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 687 (Tenn. 1996)).

Tennessee law, negligence claims must be brought within three years of accrual. *Stone v. Hinds*, 541 S.W.2d 598 (Tenn. App. 1976). "A cause of action accrues for . . . negligent misrepresentation when a plaintiff discovers, or in the exercise of reasonable care and diligence, should have discovered, his injury and the cause thereof." *Med. Educ. Assistance Corp. v. State ex rel. E. Tenn. State Univ. Quillen Coll. of Med.*, 19 S.W.3d 803, 817 (Tenn. Ct. App. 1999). "The statute is tolled only during the period when the plaintiff has no actual or constructive knowledge of the alleged wrong." *Ne. Knox Util. Dist. v. Stanfort Const. Co.*, 206 S.W.3d 454, 459 (Tenn. Ct. App. 2006). The plaintiffs seek to bolster their claim that, prior to the plaintiffs purchasing the house, Regions negligently misrepresented that the house was not in the flood zone:

> Plaintiffs further amend Paragraph 82 as follows:
> "Regions/AmSouth acting in the course of its/their business, profession, or employment, supplied faulty information meant to guide Plaintiffs in their business transaction by failing to verify that the Bay Point property was not in a flood zone prior to Plaintiffs' purchase of that property. Moreover, these defendant(s) failed to exercise reasonable care in obtaining or communicating information regarding the flood certification determination, even though it/they certified the accuracy of the information provided. Plaintiffs justifiably relied on this misinformation—and it was foreseeable to Regions/AmSouth that Plaintiffs would do so—in both purchasing the [house] and in not purchasing flood insurance for the [house]."

(Docket No. 168-2, p. 5.)

Regions' alleged misrepresentation occurred prior to August 21, 2006, the date the plaintiffs closed on the house. The misrepresentation alleged is that Regions negligently certified CoreLogic's incorrect determination that the plaintiffs' house was not in a flood zone under the 1981 FIRM. In September or October 2006, Regions notified plaintiffs that their house was in a flood zone *pursuant to the revised FIRM issued on September 20, 2006*. If the

10

plaintiffs knew, upon this notification, that the initial flood zone determination based on the 1981 FIRM was incorrect, the statute of limitations would have started running for claims based on Regions' representations made prior to closing, and those claims would now be time-barred. But taking the facts in the light most favorable to the plaintiffs, the only knowledge the plaintiffs gained in September or October 2006 was that their house was now in a flood zone based on the newly-issued 2006 FIRM. The Complaint, as amended, does not state that Regions informed plaintiffs that the house was also in a flood zone under the 1981 FIRM, about which they had been misled. And if, as the plaintiffs allege, they did not know that the initial flood zone determination was wrong until after the May 2010 flood, the statute of limitations for Regions' misrepresentations of that determination prior to closing did not start running until 2010. They filed this case in 2011. Therefore, the plaintiffs' amendments related to their negligent misrepresentation claim against Regions are not futile as time-barred.

Finally, the plaintiffs seek to add a new theory of liability, amending the Complaint to state that Regions "was obligated to procure force-placed flood insurance on the property pf [sic] flood insurance had not otherwise been procured" and "negligent in failing to procure force-placed insurance to provide coverage for the uninsured losses incurred by Plaintiffs in this matter." (Docket No. 168-2, p.3, 5.) Regions argues that the Complaint as amended does not "identify any authority or facts that would confer an independent duty upon Regions that would form a valid basis for Plaintiffs' alleged tort claim." (Docket No. 169, p. 3.) The first element of a negligence cause of action is "a duty of care owed by the defendant to the plaintiff." *King v. Anderson Cty.*, 419 S.W.3d 232, 246 (Tenn. 2013). The Complaint as amended contains no facts explaining why Regions had a duty to force place insurance on the house to protect the Harrises

against uninsured losses. It states only that Regions was "obligated" to do so, (Docket No. 168-2, p. 3), despite the fact that the Deed of Trust specifically disclaims any such obligation:

> If Borrower fails to maintain [flood insurance], Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower.

(Docket No. 18-1, p.6.) To survive a motion to dismiss, the plaintiffs cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Because the plaintiffs do not plead facts sufficient to establish that Regions had a duty to procure force-placed insurance, their proposed amendment related to this theory of negligence is futile.

## CONCLUSION

For the foregoing reasons, the plaintiffs' Motion to Amend is **DENIED** with regard to their claims against Regions for breach of contract, covenant of good faith, and negligence for failure to procure force-placed insurance. The motion is **GRANTED** in all other respects. Within ten days of the issuance of this decision, the plaintiffs shall file a revised Amended Complaint that is in consonance with the rulings herein.

It is so **ORDERED**.

ENTER this 8th day of May 2018.

_____
ALETA A. TRAUGER
United States District Judge