UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL H. HARRIS and BEVERLY D. HARRIS, | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) | Case No. 3:11-cv-00412 |
| | ) ) | Judge Aleta A. Trauger |
| NATIONWIDE MUTUAL FIRE INS. CO., DAVID W. VANDENBERGH, FIRST AMERICAN FLOOD DATA SERVICES, FIRST AMERICAN CORPORATION, FIRST AMERICAN CORELOGIC, INC., REGIONS BANK, AMSOUTH BANK, N.A., GEORGE V. LOGAN and DOROTHY A. LOGAN, | ) ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Pending before the court is a Motion to Dismiss Amended Complaint (Docket No. 195), filed by defendant Regions Financial Corporation and Regions Bank, as successor by merger to AmSouth Bank, N.A. (collectively "Regions"). The plaintiffs, Michael and Beverly Harris, have filed a Response in opposition (Docket No. 199), to which Regions has filed a Reply (Docket No. 200). For the reasons discussed herein, the motion will be granted and the plaintiffs' claims against Regions will be dismissed.

## BACKGROUND & PROCEDURAL HISTORY

In 2006, Michael and Beverly Harris purchased a house on the Cumberland River. They obtained a mortgage through Regions. The deed of trust required the plaintiffs to keep the house insured against flood hazards. Prior to the August 21, 2006 closing date, Regions contracted with

1

CoreLogic, a flood certification company, to provide a flood zone determination for the house. Buyers securing loans for houses in flood zones are required by lenders to purchase flood insurance pursuant to the National Flood Insurance Act of 1968, 42 U.S.C. 4001 *et seq.* ("NFIA"). Flood zones are determined by the Federal Emergency Management Agency ("FEMA") and demarcated on Flood Insurance Rate Maps ("FIRMs"). The FIRM in place at the time (the "1981 FIRM") showed that the house was in a flood zone, but CoreLogic incorrectly determined that the house was not in a flood zone and that flood insurance was thus not required. The plaintiffs did not purchase flood insurance.

On September 20, 2006, FEMA issued a revised FIRM (the "2006 FIRM"). In late September or early October, Regions informed the plaintiffs that their house was in a flood zone under the 2006 FIRM and that flood insurance was thus required. The plaintiffs hired an insurance agent named David Vandenbergh to obtain a policy, which he procured from Nationwide Mutual Fire Insurance Company ("Nationwide"). There are two types of policies relevant to this dispute: "pre-FIRM" policies, which cover houses built before implementation of the 1981 FIRM, and "post-FIRM" policies, which cover houses built after implementation of the 1981 FIRM. *See* 44 C.F.R. § 59.1 (defining "Existing construction" and "New construction"). As a precondition to purchasing insurance, buyers purchasing post-FIRM policies are required to obtain an elevation certificate showing that the house is sufficiently elevated above the base flood zone. If part of a post-FIRM house falls below the elevation line, that part of the house is uninsurable. Buyers purchasing pre-FIRM policies do not need an elevation certificate because pre-FIRM houses are fully insurable, regardless of elevation. *See generally* 44 C.F.R. § 60.3 (outlining elevation certificate requirements). The plaintiffs were told that their house was a pre-FIRM property built

before the 1981 FIRM was implemented[1] and that they were therefore not required to obtain an elevation certificate. However, this information was wrong. The plaintiffs' house was built in 1984, making it a "post-FIRM" property that did require an elevation certificate. As a result, the house was not fully insurable. The plaintiffs did not know that they had been misinformed or that the house was not fully insurable. They purchased a pre-FIRM policy that did not require an elevation certificate.

In May 2010, a 1000-year flood filled the plaintiffs' house with sixteen inches of water. The plaintiffs filed a claim with Nationwide under their policy. Nationwide responded that their rating information was incomplete because the plaintiffs' house required an elevation certificate. An elevation analysis was conducted, and a flood adjuster determined that the bottom floor of the plaintiffs' home was not insured under the policy because it was situated below the base flood-zone elevation. As a result, Nationwide did not cover damages sustained to the bottom floor of the house, including damage to the plaintiffs' personal property therein.

On May 2, 2011, the plaintiffs filed a Complaint in this court. (Docket No. 1.) CoreLogic filed a Motion to Dismiss (Docket No. 25), which was granted (Docket No. 54). The court held that the common law negligence claims against CoreLogic were precluded by the NFIA. Regions then filed its own Motion to Dismiss (Docket No. Docket No. 60), which also was granted. (Docket No. 80.)[2] On appeal, the Sixth Circuit reversed, without ruling on the merits of the plaintiffs' claims. The Sixth Circuit's narrow decision held that the NFIA does not create an implied private right of action but also does not foreclose state common law claims. *Harris v. Nationwide Mut. Fire Ins. Co.*, 832 F.3d 593, 597 (6th Cir. 2016). After remand and upon the

---

[1] The plaintiffs allege that "Vandenbergh and/or Nationwide and/or [CoreLogic] and/or Regions improperly identified [their] property as pre-FIRM." (Docket No. 1 at 7.)
[2] Both motions to dismiss were granted when this case was assigned to Judge Haynes of this court.

3

retirement of Judge Haynes in January 2017, the case was assigned to the undersigned. On March 22, 2018, the plaintiffs filed a Motion for Leave to Amend Complaint (Docket No. 168), which was granted in part by the court's May 8, 2018 Order (Docket No. 182). On May 18, 2018, the plaintiffs filed their Amended Complaint.[3] On November 19, 2018, Regions moved to dismiss the claims against it.

## **LEGAL STANDARD**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the

---

[3] The plaintiffs' Amended Complaint (Docket No. 184) is not, as filed, an Amended Complaint at all. It is simply a list of the plaintiffs' proposed alterations to their original Complaint. Failure to file a full amended pleading directly violates Local Rule 15.01(b), which states: "Amended pleadings must restate the entirety of the pleading with amendments incorporated, rather than merely reciting the amended sections." The plaintiffs will be ordered to correct this error.

4

plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

## ANALYSIS

In 1968, Congress enacted the NFIA to make flood insurance coverage available on reasonable terms to private residences and businesses in high-risk areas, thereby easing the burden that flood disasters inflict on the federal treasury. *See, e.g., Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 946 (6th Cir. 2002); *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). Under the NFIA, FEMA may either issue its own flood insurance policies to property owners or utilize private insurance companies, as agents of the United States, to issue and administer policies. 42 U.S.C. §§ 4071(a), 4081. To this end, FEMA authorizes private insurers to issue policies in their own names and to handle all administration of the policies—including adjustment, settlement, payment, and defense of claims—with the federal government acting as a financial guarantor. 44 C.F.R. § 62.63. The general terms of these policies are governed by FEMA regulations. 44 C.F.R. § 61, Appendix A. *Id.*

The NFIA prohibits lenders from making any real estate loans in a special flood hazard area unless the property is covered by flood insurance. 42 U.S.C. § 4012a(b). When property is in a special flood hazard area, lenders must notify borrowers that flood insurance is required. *Id.* at § 4012a(e)(1). To facilitate this notice, lenders "may provide for the acquisition or

determination of such information to be made by a person other than such lender (or other person), only to the extent such person guarantees the accuracy of the information." *Id*. at § 4014b(d). If a borrower fails to purchase insurance within forty-five days, the lender is required to buy it for the borrower and charge the costs back to the borrower. *Id*. at § 4012a(e)(2). Lenders are liable for civil penalties if found to have a "pattern or practice" of violating these requirements. *Id*. at § 4012a(f)(1)–(2); *see also id*. at § 4104a(1) (stating that regulators shall require lenders to give advance notice of the flood insurance requirement before closing on a loan); 12 C.F.R. § 339.3 (prohibiting federally insured state banks from making loans in special flood hazard areas unless the property is covered by flood insurance).

The only remaining viable claims against Regions are for negligence and negligent misrepresentation.[4] Both of these claims emanate from Regions' alleged NFIA obligations. The court will address each in turn.

**A. Negligence**

The plaintiffs allege that Regions was negligent in failing to verify (1) CoreLogic's certification that the house was not located in a flood zone, and; (2) that the insurance procured by Vandenbergh was sufficient to fully cover the house against flood risk. The plaintiffs allege that, as a result of Regions' negligence, they borrowed money to purchase a house they thought was in a low risk flood zone but was in fact in a high risk flood zone. They allege that they would not have bought the house, had they known its actual flood zone status. In addition, the plaintiffs

---

[4] In its previous Order, the court held that amendment of the plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing was futile because the plaintiffs could not state a claim for either cause of action. (Docket No. 182 at 9.) The plaintiffs subsequently abandoned those claims. (Docket No. 199 at 2.)

6

allege that they were injured by Regions' failure to ensure that adequate flood insurance was maintained on the house.

"To establish a claim for negligence, a plaintiff must demonstrate (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the applicable standard of care; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, causation." *Power & Tel. Supply Co. v. SunTrust Banks, Inc*., 447 F.3d 923, 932 (6th Cir. 2006) (citing *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)). "Duty is a legal obligation to conform to a reasonable person standard of care in order to protect others against unreasonable risks of harm." *Bissinger v. New Country Buffet*, No. M2011-02183-COA-R9CV, 2014 WL 2568413, at *8 (Tenn. Ct. App. June 6, 2014) (citing *Satterfield v. Breeding Insulation Co*., 266 S.W.3d 347, 355 (Tenn. 2008). "In any negligence case, the question is whether the particular defendant owes a particular duty of care to the particular plaintiff." *Id*. (citing *West v. E. Tenn. Pioneer Oil Co*., 172 S.W.3d 545, 550 (Tenn. 2005). The duty element "is entirely a question of law for the court." *Power & Tel. Supply Co.*, 447 F.3d at 932. Regions argues that the plaintiffs cannot establish their negligence claim because it owed them no duty as their mortgage servicer to verify the acts of CoreLogic and Vandenbergh. The plaintiffs contend that Regions had a duty under the NFIA to notify the plaintiffs that their house was in a flood zone at the time of purchase and to ensure that adequate flood insurance was maintained on the house.

As an initial matter, "[a] duty rests on everyone to use due care under the attendant circumstances, and negligence is doing what a reasonable and prudent person would not do under the given circumstances." *Dooley v. Everett*, 805 S.W.2d 380, 384 (Tenn. Ct. App. 1990); *Mayes v. LeMonte*, 122 S.W.3d 142, 145 (Tenn. Ct. App. 2003) (same, quoting *Dixon v. Lobenstein*, 175 Tenn. 105, 132 S.W.2d 215, 216 (Tenn. 1939)); *see also Doe v. Linder Constr. Co*., 845 S.W.2d

7

173, 178 (Tenn. 1992) ("Foreseeability is the test of negligence. If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise, . . ."). So, as a matter of course, Regions has a duty to exercise due care when undertaking its business. However, under Tennessee law, when two parties enter into a contractual arrangement, their obligations to each other thereafter generally arise only out of the contract itself. *Thomas & Assoc., Inc. v. Metro. Gov't of Nashville*, No. M2001-00757-COA-R3-CV, 2003 WL 21302974, at *6 (Tenn. Ct. App. June 6, 2003) (citation omitted).

> If a duty to conform to a standard exists between the parties irrespective of contract, and the defendant is negligent, the damaged plaintiff, generally speaking, may sue in tort. However, if the only source of duty between a particular plaintiff and defendant is their contract with each other, then a breach of that duty, without more, ordinarily will not support a negligence action.

*Id.* (citation omitted).

Tennessee law therefore does not impose common law duties on financial institutions with respect to their customers, depositors, or borrowers, absent special circumstances. *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 932 (6th Cir. 2006) (citing *Glazer v. First Am. Nat'l Bank*, 930 S.W.2d 546, 550 (Tenn. 1996)); *Oak Ridge Precision Indus., Inc. v. First Tenn. Bank Nat'l Ass'n*, 835 S.W.2d 25, 30 (Tenn. Ct. App. 1992). "This rests on the recognition that bank-depositor or debtor-creditor relationships generally involve arm's-length dealings." *Power & Tel. Supply Co.*, 447 F.3d at 932. This rule applies to the relationship between mortgage servicers and borrowers. *See, e.g., Layne v. Ocwen Loan Servicing, LLC*, No. 4:17-CV-4, 2018 WL 1524608, at *6–7 (E.D. Tenn. Mar. 28, 2018); *Vaughter v. BAC Home Loans Servicing, LP*, No. 3:11-CV-00776, 2012 WL 162398, at *5 (M.D. Tenn. Jan. 19, 2012) (Nixon, J.). As the court has noted previously, the plaintiffs identify no provision in the parties' deed of trust that obligated Regions to ensure the adequacy of the plaintiffs' insurance coverage. (Docket No. 182 at 9.) The

8

plaintiffs must thus point to some "special circumstance" warranting imposition of a common law duty on Regions as a financial institution.

The plaintiffs argue that Regions' violation of the NFIA constitutes such a special circumstance. Statutory violations typically do not constitute special circumstances sufficient to impose common law duties on lenders. *See Howard v. Nationstar Mortg., LLC*, No. 16-CV-2831-JTF-DKV, 2017 WL 9807334, at *3 (W.D. Tenn. June 13, 2017) (finding that violation of Tennessee Residential Lending, Brokerage, and Servicing Act, Tenn. Code Ann § 45-13-101, was not special circumstance and therefore did not provide a duty of care for common law negligence purposes). However, no Tennessee court has considered whether the NFIA specifically may give rise to a common law duty sufficient to sustain a claim for negligence. "When resolving an issue of state law," a federal court must "look to the final decisions of that state's highest court, and if there is no decision directly on point, then [it] must make an *Erie* guess[5] to determine how that court, if presented with the issue, would resolve it." *In re Fair Fin. Co.*, 834 F.3d 651, 671 (6th Cir. 2016) (quoting *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358–59 (6th Cir. 2013)).

The plaintiffs' argument is premised on the Eighth Circuit's decision in *Hofbauer v. Nw. Nat. Bank of Rochester, Minn.*, 700 F.2d 1197 (8th Cir. 1983). Faced with a case factually similar to this one, the Eighth Circuit ruled—as the Sixth Circuit ruled in this case[6]—that no express or implied private cause of action exists under the NFIA. *Id.* at 1201. However, the Eight Circuit also determined—as the Sixth Circuit determined in this case[7]—that the absence of a private cause

---

[5] "*Erie* guess" refers to *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).
[6] *Harris*, 832 F.3d at 597.
[7] *Harris*, 832 F.3d at 597.

9

of action did not necessarily foreclose state common law causes of action based on the NFIA. The Eighth Circuit explained:

> Even though the Hofbauers cannot assert a private cause of action arising under federal law, the federal statutes may create a standard of conduct which, if broken, would give rise to an action for common-law negligence. That is a question of Minnesota law best left to the courts of that State. . . . The NFIA does not itself create a federal cause of action, but we do not think it prohibits a state court from finding negligence when there has been a violation of the statute.

*Id*. The Eighth Circuit explicitly reserved the issue for resolution in the state courts and did not make any judgment as to whether the NFIA creates a common law duty. *Id*. ("Those courts can then decide whether the common law of Minnesota adopts as a standard of conduct for negligence purposes the duties established by the NFIA. We leave that issue entirely to the state courts."). The Sixth Circuit likewise did not pass judgment on the viability of common law negligence claims predicated on an NFIA-derived duty. *See Harris*, 832 F.3d at 597 ("[W]e express no view on the merits of plaintiffs' claims under Tennessee law . . . .").

The plaintiffs cite no cases in which a court has recognized a state law claim against a lender based on a third-party's incorrect flood zone determination. They cite two Ohio cases—each nearly forty years old—for the proposition that certain acts by a lender related to general mortgage insurance can give rise to a common law fiduciary duty. *See Stone v. Davis*, 66 Ohio St. 2d 74, 78 (Ohio 1981); *Walters v. First Nat. Bank of Newark*, 69 Ohio St. 2d 677, 679 (Ohio 1982). But these cases address a specific duty found under Ohio law; as noted above, Tennessee law does not recognize such a fiduciary duty between lenders and borrowers. *See Layne*, No. 4:17-CV-4, 2018 WL at *6–7; *Vaughter*, No. 3:11-CV-00776, 2012 WL at *5. Moreover, the plaintiffs contend that the duty in this case derives from the NFIA. The Ohio cases do not address a duty allegedly derived from a federal statute.

Courts are leery of imposing a state common law duty based on a federal statute lacking a private right of action. "The separation of powers doctrine and principles of federalism militate against the adoption of the federal statute as the standard of care in a state negligence action when no private cause of action, either explicit or implicit, exists in the federal statute." *R.B.J. Apartments, Inc. v. Gate City Sav. & Loan Ass'n*, 315 N.W.2d 284, 290 (N.D. 1982) (finding lender had no duty based on NFIA for common law negligence purposes). This is particularly true when, as here, the plaintiff alleging the duty is not within the class of individuals Congress sought to protect. *See Highmark Fed. Credit Union v. Hunter*, 814 N.W.2d 413, 417 (S.D. 2012) ("Based on congressional findings, courts have consistently held that in adopting the NFIA, Congress meant to protect lenders and the federal treasury.") (finding lender had no duty based on NFIA for failure to ensure borrower had flood insurance); *see also Gibson* v. *Chase Home Fin., LLC*, No. 8:11-CV-1302-T-23TBM, 2011 WL 6319401, at *3 (M.D. Fla. Dec. 16, 2011) ("Because the NFIA's main purpose is to reduce the massive burden on the federal fisc of ever-increasing federal flood disaster assistance, every single federal court to consider whether a federal private right of action arises under section 4012a has concluded that the federal treasury, not individual mortgagors, is the class the statute intends to protect.") (internal citations and quotation marks omitted).

For these reasons, courts have uniformly rejected the NFIA as giving rise to a common law duty for lenders. In *Bagelmann v. First Nat. Bank*, 823 N.W.2d 18 (Iowa 2012), the Iowa Supreme Court considered the issue at length in a case factually comparable to this one. The court concluded that a borrower cannot sue a lender for negligently failing to discharge a duty created by the NFIA. *Bagelmann*, 823 N.W.2d at 25. Many other courts have reached the same result. *See Wentwood Woodside I, LP v. GMAC Commercial Mortg. Corp.*, 419 F.3d 310, 323 (5th Cir. 2005); *Lukosus*

*v. First Tenn. Bank Nat'l Ass'n*, 89 F. App'x. 412, 412 (4th Cir. 2004) (rejecting claims charging banks "with various common law offenses based on their failure to provide proper flood certification"); *Pippin v. Burkhalter*, 276 S.C. 438, 440 (S.C. 1981) ("It is clear that the [NFIA] provisions are intended to protect a class of loans supervised, approved, regulated or insured by the federal government and all those associated with such loans. There can be no implied cause of action in the purchaser."); *Wise v. HSBC Mortg. Corp.*, No. 4:15-CV-911, 2015 WL 6796955, at *5 (E.D. Mo. Nov. 6, 2015) ("Without the guidance of Missouri courts on the matter, this Court is unwilling to interpret the National Flood Insurance Act as creating a duty which can sustain a private cause of action for negligence under Missouri law."); *Nicholson v. Countrywide Home Loans*, No. 1:07 CV 3288, 2008 WL 731032, at *3 (N.D. Ohio Mar. 17, 2008) ("Plaintiffs argue that the NFIA creates a 'duty' between the lender and the borrower sufficient to sustain a negligence claim. The Court finds no basis for this assertion.); *Ellis v. Countrywide Home Loans, Inc.*, 541 F.Supp.2d 833, 838 (S.D. Miss. 2008) (making an *Erie* guess that the Mississippi Supreme Court would decline to recognize state common law negligence claims against lenders for erroneous flood hazard determinations); *see also Duong v. Allstate Ins. Co.*, 499 F.Supp.2d 700, 703–04 (E.D. La. 2007); *Callahan v. Countrywide Home Loans, Inc.*, Case No. 3:06-cv-105, 2006 WL 3913763, at *2 (N.D. Fla. Jul 26, 2006); *Jacobson v. Banco Mort. Co.*, 547 F.Supp. 954, 958 (D. Minn. 1981).

As noted above, the plaintiffs cite no cases in which a court allowed a state negligence claim based on an NFIA-derived duty. Absent any authority to the contrary, the court must assume that the Tennessee Supreme Court would follow the rest of the country and hold that a plaintiff cannot sustain a claim for negligence based on a duty allegedly imposed by the NFIA. The court therefore holds that violation of the NFIA is not a "special circumstance" sufficient to create a

common law duty on the part of lenders. The plaintiffs' negligence claim fails as a matter of law and will be dismissed.

### B. Negligent Misrepresentation

The plaintiffs allege that: (1) prior to the plaintiffs closing on the house, Regions misrepresented to the plaintiffs that their house was not in a flood zone, and; (2) in late September or early October 2006, Regions misrepresented that the house was subject to the 2006 FIRM, when in fact it was also subject to the 1981 FIRM. The plaintiffs contend that, if not for the former, they would not have bought the property and, if not for the latter, they would have known their property was not fully insurable years before the 2010 flood.

The Tennessee Supreme Court "has adopted the Restatement (Second) of Torts § 552 (1977) as the guiding principle" for negligent misrepresentation claims. *Hodge v. Craig*, 382 S.W.3d 325, 344 (Tenn. 2012) (citing *Bethlehem Steel Corp. v. Ernst & Whinney*, 822 S.W.2d 592, 595 (Tenn. 1991); *John Martin Co. v. Morse/Diesel, Inc*., 819 S.W.2d 428, 433 (Tenn. 1991)). Negligent misrepresentation is established if a plaintiff demonstrates (1) that the defendant supplied information to the plaintiff, (2) that this information was false, (3) that the defendant "did not exercise reasonable care in obtaining or communicating the information," and (4) that the plaintiff "justifiably relied on the information." *Walker v. Sunrise Pontiac-GMC Truck, Inc*., 249 S.W.3d 301, 311 (Tenn. 2008); *see also Menuskin v. Williams*, 145 F.3d 755, 762–63 (6th Cir. 1998) (citing *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991)). A negligent misrepresentation must relate to a material past or existing fact. *See Gleason v. Freeman*, No. 06-2443-JPM/TMP, 2008 WL 2485607, *4 (W.D. Tenn. June 17, 2008); *York v. Branell College*, No. 02A01-9209-CV-00257, 1993 WL 484203, **12–13 (Tenn. Ct. App. Nov. 23, 1993); *McElroy v. Boise Cascade Corp*., 632 S.W.2d 127, 130 (Tenn. Ct. App. 1982). "As a general

matter, a party may be found liable for damages caused by his or her failure to disclose material facts to the same extent that the party may be held liable for damages caused by fraudulent or negligent misrepresentations." *Fayne v. Vincent*, 301 S.W.3d 162, 177 (Tenn. 2009).

Regions avers that the plaintiffs' claims are deficiently pleaded. It invokes the heightened pleading standards of Federal Rule of Civil Procedure 9(b). "[T]he current consensus of federal courts" is that Rule 9(b) governs negligent misrepresentation claims brought under Tennessee law. *Sony/ATV Music Publ'g LLC v. 1729172 Ontario, Inc.*, No. 3:14-CV-1929, 2016 WL 4239920, at *3 (M.D. Tenn. Aug. 11, 2016) (Sharp, J.); *see also Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014); *Pugh v. Bank of Am.*, No. 13-2020, 2013 WL 3349649, at *16 (W.D. Tenn. July 2, 2013). Rule 9(b) demands that, when pleading fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Sixth Circuit has explained that, while Rule 9(b) imposes a heightened standard, the underlying purpose of the rule is to serve the same ends as the general pleading requirements of Rule 8:

> [Rule 9(b)] should not be read to defeat the general policy of "simplicity and flexibility" in pleadings contemplated by the Federal Rules. Rather, Rule 9(b) exists predominantly for the same purpose as Rule 8: to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading. Rule 9(b), however, also reflects the rulemakers' additional understanding that, in cases involving fraud and mistake, a more specific form of notice is necessary to permit a defendant to draft a responsive pleading.

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (citations and quotation marks omitted). "So long as a [plaintiff] pleads sufficient detail—in terms of time, place, and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id*.

The plaintiffs' claims cannot withstand this heightened standard. With regard to the alleged misrepresentation prior to closing that the house was not in a flood zone, the plaintiffs allege that CoreLogic supplied false information via the inaccurate flood certification report. (*See, e.g.,* Docket No. 1 at 5 ("[T]he Harrises and Regions were provided with flood certification information at the closing on the house, and the company providing the flood certification was [CoreLogic]); Docket No. 184 at 2 ([B]ased upon [CoreLogic's] flood certification, the Harrises and Regions were informed that they need not procure flood insurance at the time they purchased the house and procured the mortgage on the house.").) The only allegations implicating Regions state that "Regions further misrepresented to Plaintiffs the accuracy of the flood certification report and induced Plaintiffs to rely upon this report." (Docket No. 184 at 3.) The plaintiffs also allege that Regions "supplied faulty information meant to guide Plaintiffs by failing to verify that the [house] was not in a flood zone prior to Plaintiffs' purchase of the property. Moreover, [Regions] failed to exercise reasonable care in obtaining or communicating information regarding the flood certification determination, even though [it] certified the accuracy of the information provided." (Docket No. 184 at 4.) Failure to verify is an act of negligence, not a negligent misrepresentation. It is not a representation at all. The allegation as to the alleged misrepresentation of the report's accuracy plainly fails to meet Rule 9(b)'s requirements: it sets forth no time, place, speaker, or specific contents of the alleged misrepresentation. *Cf. House v. Bristol-Myers Squibb Co.*, No. 3:15-CV-00894-JHM, 2017 WL 55876, at \*9 (W.D. Ky. Jan. 4, 2017) ("The Complaint does not specify the statements in question, identify the speaker, or allege, beyond highly generalized allegations, when or where the alleged statements were made. It therefore fails to meet Rule 9(b)'s particularity requirements.").

With regard to the representation that the house was subject to the 2006 FIRM, the plaintiffs do not allege any actual misrepresentation. The thrust of the plaintiffs' claim seems to be an inference that their house was *only* subject to the September 2006 FIRM. But the plaintiffs do not plead that Regions told them that. The Amended Complaint states:

> On September 20, 2006, the Federal Emergency Management Agency (hereinafter referred to as "FEMA") implemented a revised FIRM for parts of Sumner County.
>
> In late September 2006 to early October 2006, the Harrises were contacted by Regions and informed that they were now in Flood Zone AE. The correspondence further informed them that they had forty-five (45) days to procure flood insurance. However, the FIRM with effective date of August 3, 1981, clearly shows Bay Point located in Eleven-Year Flood Zone A2.

(Docket No. 1 at 6.) The only representation on which the plaintiffs' claim hinges is thus the factually accurate statement that, pursuant to the newly-issued September 2006 FIRM, the plaintiffs' house was located in Flood Zone AE. The plaintiffs do not plead that Regions made any representation at all about the house's status relative to the 1981 FIRM.

Moreover, even if Regions' non-representation regarding the 1981 FIRM could constitute an actionable omission, the plaintiffs do not plead any facts indicating that Regions was negligent. They do not plead facts supporting that Regions knew or had reason to know that the house was subject to the 1981 FIRM. They do not plead any facts supporting that Regions had reason to doubt CoreLogic's certification. Their allegation that Regions "failed to exercise reasonable care in obtaining or communicating information regarding the flood certification"[8] is precisely the type of "legal conclusion" insufficient for "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678–79; *cf. Pugh*, No. 13-2020, 2013 WL at *16 (dismissing claim where plaintiff pled "no factual allegation that . . . Defendants failed to

---

[8] (Docket No. 184 at 4.)

exercise reasonable care in communicating" information). The plaintiffs cannot sustain a negligent misrepresentation claim on these grounds.

Perhaps recognizing their pleading's deficiencies, within their Response, the plaintiffs request permission to file a Second Amended Complaint. (Docket No. 199 at 13.) Federal Rule of Civil Procedure 15(a) governs amending pleadings before trial. Where amendment is requested, "[t]he court should freely give leave when justice so requires." *Id*. The district court has broad discretion to determine "when justice so requires." *Martin v. Assoc. Truck Lines, Inc*., 801 F.2d 246, 248 (6th Cir. 1986). A motion to amend may be denied as futile if it could not withstand a Rule 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co*., 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dept. of Treasury, State of Mich., Revenue Div*., 987 F.2d 376, 382–83 (6th Cir. 1993)).

> The plaintiffs seek to amend their Amended Complaint to add the following:
>
> Regions/AmSouth acting in the course of its/their business, profession, or employment, supplied faulty information to the Harrises, including: (1) Regions/AmSouth negligently misrepresented to the Harrises that Bay Point was not in a flood zone, at the time the Harrises purchased the property; and (2) Regions/AmSouth negligently misrepresented to the Harrises that Bay Point was subject to the 2006 FIRM, in September or October of 2006, despite Bay Point having been subject to the 1981 FIRM at all relevant times. These representations were meant to guide the Harrises in their business transaction. Moreover, Regions/AmSouth failed to exercise reasonable care in obtaining or communicating information regarding the flood certification determination, even though it/they certified the accuracy of the information provided. The Harrises justifiably relied on this misinformation—and it was foreseeable to Regions/AmSouth that the Harrises would do so—in both purchasing Bay Point and in securing flood insurance. Due to Regions/AmSouth's misrepresentations, the Harrises secured pre-FIRM insurance for Bay Point, rather than post-FIRM.

(Docket No. 199-1 at 2.)

These amendments do not remedy the claims' defects. The plaintiffs' first allegation would still fail to satisfy Rule 9(b), and the second would still fail to state any actionable

17

misrepresentation. The plaintiffs will therefore not be allowed to amend their Amended Complaint. Their claim for negligent misrepresentation will be dismissed.

## **CONCLUSION**

For the foregoing reasons, Regions' Motion to Dismiss (Docket No. 195) will be granted. The plaintiffs' claims against Regions will be dismissed.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge