# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **MICHAEL H. HARRIS and BEVERLY D. HARRIS,** ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> ) <br> **NATIONWIDE MUTUAL FIRE INS. CO.,** ) <br> **DAVID W. VANDENBERGH,** ) <br> **FIRST AMERICAN FLOOD DATA** ) <br> **SERVICES,** ) <br> **FIRST AMERICAN CORPORATION,** ) <br> **FIRST AMERICAN CORELOGIC, INC.,** ) <br> **REGIONS BANK,** ) <br> **AMSOUTH BANK, N.A.,** ) <br> **GEORGE V. LOGAN and DOROTHY A.** ) <br> **LOGAN,** ) <br> ) <br> **Defendants.** ) | **Case No. 3:11-cv-00412** <br> **Judge Aleta A. Trauger** |

## MEMORANDUM

Pending before the court is a Motion for Summary Judgment (Docket No. 211), filed by defendants CoreLogic Flood Services, LLC f/k/a First American Flood Data Services, First American Corporation, and First American CoreLogic, Inc. (collectively, "CoreLogic"). The plaintiffs, Michael and Beverly Harris, have filed a Response in opposition (Docket No. 217), to which CoreLogic has filed a Reply (Docket No. 221). For the reasons discussed herein, the motion will be denied.

## BACKGROUND & PROCEDURAL HISTORY

In 2006, Michael and Beverly Harris were in the market for a new home. Their previous house having been destroyed by a tornado, the plaintiffs were looking for a safe investment. (Docket No. 211-3 at 14–15 (Deposition of Michael Harris).) On June 13, 2006, the plaintiffs

executed a purchase agreement for a two-story house on the Cumberland River. (Docket No. 211-4.) The purchase agreement included the following language:

> Survey Work and Flood Certifications are the best means of identifying boundary lines and/or encroachments and easements or flood zone classifications. Buyer may obtain a Mortgage Loan Inspection or Boundary Line Survey and Flood Zone Certifications. If these matters are of concern to the Buyer, Buyer should address these concerns in the Special Stipulations Section of this Agreement.

(*Id*. at 6.) In the agreement's Special Stipulations section, the plaintiffs listed the ability to use the dock lift on the lake and details regarding inspection of the house, but did not address flood zone determinations. They paid an undisclosed sum of earnest money and obtained a mortgage through Regions Bank ("Regions").

Prior to the August 21, 2006 closing date, Regions contracted with CoreLogic, a flood certification company, to provide a flood zone determination for the house. Buyers securing loans for houses in flood zones are required by lenders to purchase flood insurance pursuant to the National Flood Insurance Act of 1968, 42 U.S.C. 4001 *et seq*. ("NFIA"). Flood zones—known as Special Flood Hazard Areas ("SFHA")—are determined by the Federal Emergency Management Agency ("FEMA") and demarcated on Flood Insurance Rate Maps ("FIRMs"). The FIRM in place at the time (the "1981 FIRM") showed that the house was in a SFHA.

CoreLogic incorrectly determined that the house was not in a flood zone and that flood insurance was thus not required. CoreLogic made its determination on July 3, 2006, via a Standard Flood Hazard Determination Form ("SFHDF"). (Docket No. 211-5.) The plaintiffs received the SFHDF prepared by CoreLogic at the August 21, 2006 closing on their house. (Docket No. 211-3 at 4, 6 (Deposition of Michael Harris).) In the section immediately following CoreLogic's determination that the plaintiffs' house was not in a flood zone, the SFHDF included the following language:

>However, your home may be near a SFHA. As such you, or your lender, may want to consider the advisability of obtaining flood insurance at reduced rates. You should check with your insurance agent or company as to coverage types and amounts available to you and make your own determination as to whether you desire any such coverage.

(Docket No. 211-5 at 1.) On the next page, the SFHDF included the following disclaimer:

> THIS FLOOD DETERMINATION IS PROVIDED TO THE LENDER PURSUANT TO THE FLOOD DISASTER PROTECTION ACT. IT SHOULD NOT BE USED FOR ANY OTHER PURPOSE.

(*Id.* at 2.) The plaintiffs cannot remember whether they read the full SFHDF upon receiving it; however, they understood that it stated CoreLogic's determination that the house was not in a flood zone. (Docket No. 211-7 at 3.) The plaintiffs closed on the house and, subsequently, did not purchase flood insurance.

In his deposition, Michael Harris stated unequivocally that the plaintiffs would not have purchased the house, had they known it was in a flood zone:

> Q. Dr. Harris, do you believe you had the ability to walk away from this purchase agreement?
>
> A. I could have and lost my earnest money, yes.
>
> Q. Okay. You could have walked out that day?
>
> A. Yes.
>
> Q. And you're saying that that's what you would have done?
>
> A. I probably would have.
>
> Q. I need to know more than probably, Doctor.
>
> A. Yes, I would have.
>
> Q. Would you probably would have or you certainly would have?
>
> A. I would have walked away and left my earnest money on the table.
>
> Q. You definitely would have done that?

3

A. Yes, I would.

(Docket No. 211-3 at 15.)

On September 20, 2006, FEMA issued a revised FIRM (the "2006 FIRM"). In late September or early October, Regions informed the plaintiffs that their house was in a SFHA under the 2006 FIRM and that flood insurance was thus required. The plaintiffs hired an insurance agent named David Vandenbergh to obtain a policy, which he procured from Nationwide Mutual Fire Insurance Company ("Nationwide"). There are two types of policies relevant to this dispute: "pre-FIRM" policies, which cover houses built before implementation of the 1981 FIRM, and "post-FIRM" policies, which cover houses built after implementation of the 1981 FIRM. *See* 44 C.F.R. § 59.1 (defining "Existing construction" and "New construction"). Pre-FIRM buildings can be eligible for subsidized rates and broader coverage than Post-FIRM buildings. (Docket No. 211-8 at 4 (Affidavit of Donald R. Beaton, Jr., CFM).) As a precondition to purchasing insurance, buyers purchasing post-FIRM policies are required to obtain an elevation certificate, showing that the house is sufficiently elevated above the base flood zone. If part of a post-FIRM house falls below the elevation line, that part of the house is uninsurable. Buyers purchasing pre-FIRM policies do not need an elevation certificate because pre-FIRM houses are fully insurable, regardless of elevation. *See generally* 44 C.F.R. § 60.3 (outlining elevation certificate requirements).

The plaintiffs were told that their house was a pre-FIRM property built before the 1981 FIRM was implemented and that they were therefore not required to obtain an elevation certificate.[1] However, this information was wrong. The plaintiffs' house was built in 1984,

---

[1] The plaintiffs allege in their Complaint that "Vandenbergh and/or Nationwide and/or [CoreLogic] and/or Regions improperly identified [their] property as pre-FIRM." (Docket No. 1 at 7.) They do not present evidence that CoreLogic was in fact responsible for this misidentification.

making it a "post-FIRM" property that did require an elevation certificate. As a result, the house was not fully insurable. The plaintiffs did not know that they had been misinformed or that the house was not fully insurable. They purchased a pre-FIRM policy that did not require an elevation certificate. In May 2009, the plantiffs refinanced their mortgage to get a better rate. As part of the refinancing process, their house was appraised for $645,000—$32,500 dollars more than the plaintiffs paid for it—despite being in a SFHA. (Docket No. 211-6 at 6.)

One year later, catastrophic flooding in the Nashville area filled the plaintiffs' house with sixteen inches of water. The plaintiffs had nearly completed renovations on the house at the time of the flood. (Docket No. 211-3 at 2.) The plaintiffs filed a claim for flood damages with Nationwide under their policy. Nationwide responded that the plaintiffs' rating information was incomplete because their house required an elevation certificate. An elevation analysis was conducted, and a flood adjuster determined that the bottom floor of the plaintiffs' home was not insured under the policy because it was situated below the base flood-zone elevation. As a result, Nationwide did not cover damages sustained to the bottom floor of the house, including damage to the plaintiffs' personal property therein. The plaintiffs suffered uninsured losses as a result, and were forced to take out a significant loan from the Small Business Association. (Docket No. 211-3 at 19.)

The plaintiffs still own and reside in the house at issue in this case. At no point since purchasing the house in 2006 have the plaintiffs put it on the market. They did not try to sell the house upon learning that it was in a SFHA because they did not think anyone would buy a house in a flood zone. (Docket No. 217-3 at 17 (Deposition of Michael Harris).) In 2007, Beverly Harris's infirm father and sister moved into the plaintiffs' house. (Docket No. 217-5 at 4 (Deposition of Beverly Harris).) The plaintiffs knew in September 2006 that Beverly Harris's

5

father and/or sister would be moving in with them eventually. (*Id.*) As of April 2012, the house is no longer in a SFHA. (Docket No. 211-8 at 5.) However, the bottom floor of the plaintiffs' house remains partially uninsurable.

On May 2, 2011, the plaintiffs filed a Complaint in this court. (Docket No. 1.) CoreLogic filed a Motion to Dismiss (Docket No. 25), which was granted (Docket No. 54). The court held that the common law negligence claims against CoreLogic were precluded by the NFIA. Regions then filed its own Motion to Dismiss (Docket No. Docket No. 60), which also was granted. (Docket No. 80.)[2] On appeal, the Sixth Circuit reversed, without ruling on the merits of the plaintiffs' claims. The Sixth Circuit's narrow decision held that the NFIA does not create an implied private right of action but also does not foreclose state common law claims. *Harris v. Nationwide Mut. Fire Ins. Co.*, 832 F.3d 593, 597 (6th Cir. 2016). After remand and upon the retirement of Judge Haynes in January 2017, the case was reassigned to the undersigned. On March 22, 2018, the plaintiffs filed a Motion for Leave to Amend Complaint (Docket No. 168), which was granted in part by the court's May 8, 2018 Order (Docket No. 182). On May 18, 2018, the plaintiffs filed their Amended Complaint.[3] The plaintiffs' claims against Regions were dismissed on February 7, 2019. On February 28, 2019, CoreLogic moved for summary judgment on the plaintiffs' claim for negligent misrepresentation.

## **LEGAL STANDARD**

---

[2] Both Motions to Dismiss were granted when this case was assigned to Judge Haynes of this court.
[3] As noted by the court in its previous Memorandum (Docket No. 206), the plaintiffs' Amended Complaint does not comply with Local Rule 15.01(b), which states: "Amended pleadings must restate the entirety of the pleading with amendments incorporated, rather than merely reciting the amended sections." The plaintiffs were ordered to correct this error (*see* Docket No. 207) but have not done so. Failure to file an Amended Complaint compliant with Rule 15.01(b) by May 13, 2019 will result in dismissal of the plaintiffs' claims.

6

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of informing the court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case. *Id*.

Accordingly, to win summary judgment as to its own claims, a moving plaintiff must demonstrate that no genuine issue of material fact exists as to all essential elements of its claims. Once the moving party makes its initial showing, the burden shifts to the non-moving party to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

# ANALYSIS

The plaintiffs bring a claim of negligent misrepresentation under Tennessee law. They claim that CoreLogic was negligent in its incorrect determination that the house was not in a flood zone, that they relied on CoreLogic's determination in deciding to close on the house, and that they were damaged by CoreLogic's determination because they would not have purchased the house, had they known it was in a flood zone. CoreLogic argues that the claim should be dismissed for three reasons: (1) the plaintiffs did not justifiably rely on CoreLogic's incorrect determination; (2) the plaintiffs' claim is time-barred, and; (3) the plaintiffs failed to mitigate their damages upon learning, in 2006, that the house was in a flood zone. The court will address each argument in turn.

1. **Whether the plaintiffs justifiably relied on CoreLogic's incorrect flood zone determination in purchasing the house**

CoreLogic makes two arguments regarding reliance. First, it contends that the plaintiffs did not rely on CoreLogic's flood zone determination. Second, it argues that, even if the plaintiffs did rely on CoreLogic's determination, such reliance was not justified.

   a. **There is a genuine dispute as to whether the plaintiffs relied on CoreLogic's incorrect determination**

CoreLogic makes several arguments suggesting that the plaintiffs did not rely on its determination in deciding to close on the house. It points first to the deposition of Beverly Harris, in which she states that the plaintiffs did not read the SFHDF and accompanying notice at the closing. CoreLogic argues that the plaintiffs' failure to read the documents in full diminishes their claim that they relied on the determination contained therein. But CoreLogic does not dispute that the plaintiffs understood, at the time of the closing, that the SFHDF communicated CoreLogic's determination that the house was not in a flood zone. Whether or not the plaintiffs read the

documents front to back is of no moment. The plaintiffs received the critical misrepresentation—that the house was not in a flood zone. That is enough to give rise to a viable claim.

CoreLogic next argues that the plaintiffs' failure to reference flood zone status in the purchase agreement's Special Stipulations section precludes a finding of reliance. CoreLogic contends that, if flood zone status was a determinative factor for the plaintiffs in deciding whether to close on the house, they would have made mention of it where prompted in the purchase agreement. This argument is unavailing. The relevant language in the purchase agreement states as follows:

> Survey Work and *Flood Certifications are the best means of identifying boundary lines and/or encroachments and easements or flood zone classifications*. Buyer may obtain a Mortgage Loan Inspection or Boundary Line Survey and Flood Zone Certifications. If these matters are of concern to the Buyer, Buyer should address these concerns in the Special Stipulations Section of this Agreement.

(Docket No. 211-4 at 6 (emphasis added).) The language explicitly sets forth the "best means" of determining the house's flood zone status: a flood zone certification, exactly what they received from CoreLogic. That the plaintiffs received the flood zone certification at the closing is evidence enough that they did not need to specially stipulate anything in the purchase agreement in order to receive the optimal assurance that the house was not in a flood zone.

CoreLogic also argues that the plaintiffs did not rely on its flood zone determination because the determination did not address the pre- or post-FIRM status of the house. This argument is unrelated to the plaintiff's cause of action. While CoreLogic is correct that the SFHDF did not address whether the house was pre- or post-FIRM, that distinction is not the basis for the plaintiffs' claim. The plaintiffs contend that, had they known that the house was in a flood zone, they would not have bought it, and thus would not have suffered damages related to the 2010 flood.

That CoreLogic did not make a determination as to the house's pre- or post-FIRM status does not absolve it of liability for incorrectly determining the house's flood zone status.

Lastly, CoreLogic points to the fact that the plaintiffs did not attempt to sell their house when they found out, in 2006, that it was in a flood zone. CoreLogic argues that this shows the plaintiffs did not rely on its determination in deciding to close on the house. If the plaintiffs' interest in not owning a house in a flood zone was strong enough to walk away at the closing and sacrifice their earnest money, CoreLogic contends, then that interest must also have been strong enough that the plaintiffs would have tried to sell the house, once they found out that it was in a flood zone. This argument assumes that selling one's home is as simple as walking away from a potential transaction. There is good reason in this case to question that assumption. The plaintiffs point out that they had just gone through the hassle of dealing with a house destroyed by a tornado. Moreover, the plaintiffs had plans for Beverly Harris's infirm father and/or her sister to move into the house, and both did in fact move in. The reality of homeownership is that the decision to sell one's house can be much more complicated than simply putting one's house on the market as soon as unforeseen complications arise. A reasonable jury could find that, having just gone through the protracted process of moving into a new home and with the knowledge that family members would eventually be moving in, the plaintiffs decided that the benefits of staying outweighed the risk. Such a decision does not irrefutably lead to the conclusion that the plaintiffs would have taken on the same risk prior to purchase.

For the foregoing reasons, the court finds that there is thus a genuine dispute of material fact as to whether the plaintiffs relied on CoreLogic's flood zone determination in deciding to close on the home.

**b. There is a genuine dispute as to whether the plaintiffs' reliance was justifiable**

CoreLogic next contends that, even if the plaintiffs did rely on its incorrect determination, its reliance was not justified. Justifiable reliance is an essential element of negligent misrepresentation claims under Tennessee law. *McNeil v. Nofal*, 185 S.W.3d 402, 409 (Tenn. Ct. App. 2005). As the court has explained previously (*see* Docket No. 182 at 5), Tennessee has adopted Section 552 of the Restatement (Second) of Torts "as the guiding principle in negligent misrepresentation actions against other professionals and business persons." *Bethlehem Steel Corp. v. Ernst & Whinney*, 822 S.W.2d 592, 595 (Tenn. 1991). The Tennessee Supreme Court, in discussing the requirements for recovery under Section 552, has held that liability for negligent misrepresentation will result, despite a lack of contractual privity between a plaintiff and defendant, when:

1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and

2) the defendant supplies faulty *information meant to guide others in their business transactions*; and

3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and

4) the plaintiff justifiably relies upon the information.

*Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997) (emphasis in original). "In order to defeat summary judgment, the reasonableness of the reliance must amount to a genuine issue" of material fact. *McNeil*, 185 S.W.3d at 412 (quoting *Allied Sound, Inc. v. Neely*, 58 S.W.3d 119, 123 (Tenn. Ct. App. 2001)).

CoreLogic first argues that the plaintiffs' reliance was not justified because the SFHDF included certain language and disclaimers that, CoreLogic contends, absolve it of liability. CoreLogic points to two sections of the SFHDF. The first included the following language:

11

> However, your home may be near a SFHA. As such you, or your lender, may want to consider the advisability of obtaining flood insurance at reduced rates. You should check with your insurance agent or company as to coverage types and amounts available to you and make your own determination as to whether you desire any such coverage.

(Docket No. 211-5 at 1.) The second is the following disclaimer:

> THIS FLOOD DETERMINATION IS PROVIDED TO THE LENDER PURSUANT TO THE FLOOD DISASTER PROTECTION ACT. IT SHOULD NOT BE USED FOR ANY OTHER PURPOSE.

(*Id*. at 2.)

Neither of these sections precludes justifiable reliance by the plaintiffs on CoreLogic's incorrect determination. The first operates from the false premise that the house was not in a flood zone at the time the plaintiffs purchased it. The plaintiff's failure to purchase flood insurance for a house they were told was not in a flood zone does not excuse the very determination motivating that decision: that the house was purportedly not in a flood zone. Nor does the disclaimer render the plaintiffs' reliance unjustified. The disclaimer can reasonably be read as suggesting that the only purpose for which the determination should be used is in the commercial transaction for the plaintiffs' house, which is precisely how the plaintiffs used it. It does not state that they determination should not be relied upon by the buyers. Nor would the average buyer read it as saying such. There is thus a genuine dispute as to whether the plaintiffs' reliance was justified, despite the language in these sections of the SFHDF.

CoreLogic next argues that the plaintiffs' reliance on its determination is categorically unjustified because the plaintiffs were not the intended recipient of the determination. The court has previously held that CoreLogic, as a matter of law, may be liable to the plaintiffs for negligent misrepresentation, despite a lack of privity. (Docket No. 182 at 7.) CoreLogic attempts to circumvent that holding by recasting the issue as one of justifiable reliance. But the analysis

remains unchanged. In delineating liability for negligent misrepresentation claims, the Tennessee Supreme Court looks to Subsection (2) of Section 522 of the Restatement (Second) of Torts, which states:

> Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*See Bethlehem Steel Corp.*, 822 S.W.2d at 595. In *Bethlehem Steel Corp.*, the Tennessee Supreme Court cited Comment (h) of the Restatement in analyzing Subsection (2), emphasizing in relevant part the following passage:

> It is enough that the maker of the representation intends it to reach and influence either a particular person or persons, known to him, or a group or class of persons, distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it. *It is enough, likewise, that the maker of the representation knows that his recipient intends to transmit the information to a similar person, persons, or group.*

*Id.* (emphasis in original).

Applying these principles, the Tennessee Supreme Court found that the defendant, a national accounting firm, was liable for negligent misrepresentation to a manufacturer who relied to its detriment on an audit report prepared by the defendant in extending credit to a customer. *See id.* at 596 ("[L]iability is limited to those persons or classes of persons, as determined by current business practices and the particular factual situation, whom the accountant at the time the report is published should reasonably expect to receive and rely on the information."). This approach is in accord with other decisions by the Tennessee Supreme Court. *See, e.g., John Martin Co., Inc.*

13

*v. MorselDiesel, Inc.*, 819 S.W.2d 428 (Tenn. 1991) (construction manager liable to subcontractor, despite lack of privity, where manager negligently supplied information upon which subcontractor relied in performing work at construction site); *Tartera v. Palumbo*, 453 S.W.2d 780 (Tenn. 1970) (land surveyor hired by purchaser liable to seller for negligently prepared plat, where surveyor knew plat would be used to describe property in warranty deed that would be relied upon by both purchaser and seller).

Under the Restatement approach endorsed by the Tennessee Supreme Court, CoreLogic may be liable to the plaintiffs for negligent misrepresentation, despite a lack of contractual privity. CoreLogic supplied an incorrect determination that it knew the plaintiffs might rely upon in deciding whether or not to purchase their house. Although the determination was conducted at the behest of Regions, CoreLogic knew that the information it provided would be transmitted to the plaintiffs, who might then rely upon it in deciding whether to purchase their house. That the report was prepared for Regions does not mean that the plaintiffs' reliance on it was categorically unjustified. The reasonableness of the plaintiffs' reliance on CoreLogic's incorrect determination amounts to a genuine issue of dispute. Summary judgment is therefore unwarranted.

**2. The plaintiff's claims are not time-barred**

CoreLogic first argues that the statute of limitations has run on the plaintiffs' claim. Under Tennessee law, negligence claims must be brought within three years of accrual. *Stone v. Hinds*, 541 S.W.2d 598, 599 (Tenn. App. 1976). "A cause of action accrues for . . . negligent misrepresentation when a plaintiff discovers, or in the exercise of reasonable care and diligence, should have discovered, his injury and the cause thereof." *Med. Educ. Assistance Corp. v. State ex rel. E. Tenn. State Univ. Quillen Coll. of Med.*, 19 S.W.3d 803, 817 (Tenn. Ct. App. 1999). "The statute is tolled only during the period when the plaintiff has no actual or constructive

knowledge of the alleged wrong." *Ne. Knox Util. Dist. v. Stanfort Const. Co.*, 206 S.W.3d 454, 459 (Tenn. Ct. App. 2006).

CoreLogic's alleged misrepresentation occurred on August 21, 2006, the date the plaintiffs closed on the house. In September or October 2006, Regions notified plaintiffs that their house was in a SFHA pursuant to the revised FIRM issued on September 20, 2006. If the plaintiffs had known, upon this notification, that CoreLogic's initial flood zone determination based on the 1981 FIRM was incorrect, the statute of limitations would have started running for the plaintiffs' claim based on that determination, and that claim would now be time-barred. But the only knowledge the plaintiffs gained in September or October 2006 was that their house was, as of September 2006, in a SFHA under the newly-issued 2006 FIRM. The plaintiffs did not know that the initial flood zone determination was wrong until after the May 2010 flood; thus, the statute of limitations for CoreLogic's alleged negligent misrepresentation did not start running until 2010. The plaintiffs filed this case in 2011. Their claim is not time-barred.

### 3. The plaintiffs have not failed to reasonably mitigate their damages

CoreLogic's final argument is that the plaintiffs failed to mitigate any damages they suffered as a result of the incorrect flood zone determination. The plaintiffs have a right to recover for all losses proximately caused by [the defendant's] tortious conduct. *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 233 (Tenn. Ct. App. 1976). It is the plaintiffs' burden to prove their damages. *Id*. "It is the duty of an injured party to exercise reasonable care and diligence to avoid loss or minimize damages. The applicable standard is one of reasonable care." *Id*. at 234. The plaintiffs are not required to mitigate their damages "if such action is unduly burdensome or impossible." *Id*.

CoreLogic argues that the plaintiffs failed to mitigate their damages by not selling the house, once it was determined that the house was in a flood zone. CoreLogic contends that, because the 2009 appraisal indicates that the house had appreciated by over $30,000, the plaintiffs could have sold the house, had they wanted to. But this does not necessarily follow. Michael Harris explained in his deposition that he did not think anyone would buy the house because it was in a flood zone. And, as discussed above, there are other considerations that might have rendered another move unduly burdensome under the circumstances, such as the knowledge that Beverly Harris's infirm family members would eventually need to live with them, or the fact that they had just dealt with the destruction of another house by a natural disaster. There is a genuine dispute as to whether the plaintiffs' decision not to put the house back on the market immediately after moving in was reasonable. Summary judgment on the issue of whether the plaintiffs unreasonably failed to mitigate their damages is therefore unwarranted.

## **CONCLUSION**

For the foregoing reasons, CoreLogic' Motion for Summary Judgment (Docket No. 211) will be denied.

An appropriate order will enter.

ENTER this 7th day of May 2019.

 ALETA A. TRAUGER
 United States District Judge