# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **MICHAEL H. HARRIS and BEVERLY D. HARRIS,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Case No. 3:11-cv-00412** |
| ) | **Judge Aleta A. Trauger** |
| ) | |
| **CORELOGIC FLOOD SERVICES F/K/A** ) | |
| **FIRST AMERICAN FLOOD DATA** ) | |
| **SERVICES,** ) | |
| **FIRST AMERICAN CORPORATION,** ) | |
| **FIRST AMERICAN CORELOGIC, INC.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM & ORDER

Pending before the court is a Motion *In Limine* to Exclude Expert Testimony of Michael V. Tankersly (Docket No. 232), filed by defendants CoreLogic Flood Services, LLC f/k/a First American Flood Data Services, First American Corporation, and First American CoreLogic, Inc. (collectively, "CoreLogic"). The plaintiffs, Michael and Beverly Harris, have filed a Response in opposition. (Docket No. 247). For the reasons discussed herein, the motion will be granted.

## BACKGROUND

On June 13, 2006, Michael and Beverly Harris executed a purchase agreement for a two-story house on the Cumberland River, at a price of $612,500. (Docket No. 211-4.) They obtained a mortgage through Regions Bank ("Regions"). Prior to the August 21, 2006 closing date, Regions contracted with CoreLogic, a flood certification company, to provide a flood zone determination for the house. Buyers securing loans for houses in flood zones are required by lenders to purchase flood insurance pursuant to the National Flood Insurance Act of 1968, 42 U.S.C. 4001 *et seq*.

("NFIA"). Flood zones—known as Special Flood Hazard Areas ("SFHA")—are determined by the Federal Emergency Management Agency ("FEMA") and demarcated on Flood Insurance Rate Maps ("FIRMs"). The FIRM in place at the time (the "1981 FIRM") showed that the house was in a SFHA.

CoreLogic incorrectly determined that the house was not in a flood zone and that flood insurance was thus not required. CoreLogic made its determination on July 3, 2006, via a Standard Flood Hazard Determination Form ("SFHDF"). (Docket No. 211-5.) The plaintiffs closed on the house and did not purchase flood insurance. They contend that they would not have purchased the house, had they known it was in a flood zone.

On September 20, 2006, FEMA issued a revised FIRM (the "2006 FIRM"). In late September or early October, Regions informed the plaintiffs that their house was in a SFHA under the 2006 FIRM and that flood insurance was thus required. The plaintiffs hired an insurance agent named David Vandenbergh to obtain a policy, which he procured from Nationwide Mutual Fire Insurance Company ("Nationwide"). There are two types of policies relevant to this dispute: "pre-FIRM" policies, which cover houses built before implementation of the 1981 FIRM, and "post-FIRM" policies, which cover houses built after implementation of the 1981 FIRM. *See* 44 C.F.R. § 59.1 (defining "Existing construction" and "New construction"). Pre-FIRM buildings can be eligible for subsidized rates and broader coverage than Post-FIRM buildings. (Docket No. 211-8 at 4 (Affidavit of Donald R. Beaton, Jr., CFM).) As a precondition to purchasing insurance, buyers purchasing post-FIRM policies are required to obtain an elevation certificate, showing that the house is sufficiently elevated above the base flood zone. If part of a post-FIRM house falls below the elevation line, that part of the house is uninsurable. Buyers purchasing pre-FIRM policies do

not need an elevation certificate because pre-FIRM houses are fully insurable, regardless of elevation. *See generally* 44 C.F.R. § 60.3 (outlining elevation certificate requirements).

The plaintiffs were told that their house was a pre-FIRM property, built before the 1981 FIRM was implemented, and that they were therefore not required to obtain an elevation certificate. However, this information was wrong. The plaintiffs' house was built in 1984, making it a "post-FIRM" property that did require an elevation certificate. As a result, the house was not fully insurable. The plaintiffs did not know that they had been misinformed or that the house was not fully insurable. They purchased a pre-FIRM policy from Nationwide that did not require an elevation certificate.

In May 2010, catastrophic flooding in the Nashville area filled the plaintiffs' house with sixteen inches of water. The plaintiffs had nearly completed renovations on the house at the time of the flood. (Docket No. 211-3 at 2.) The plaintiffs filed a claim for flood damages with Nationwide under their policy. Nationwide responded that the plaintiffs' rating information was incomplete because their house required an elevation certificate. An elevation analysis was conducted, and a flood adjuster determined that the bottom floor of the plaintiffs' home was not insured under the policy because it was situated below the base flood-zone elevation. As a result, Nationwide did not cover damages sustained to the bottom floor of the house, including damage to the plaintiffs' personal property therein. The plaintiffs suffered uninsured losses as a result and were forced to take out a significant loan from the Small Business Association. (Docket No. 211-3 at 19.)

The plaintiffs still own and reside in the house at issue in this case. At no point since purchasing the house in 2006 have the plaintiffs put it on the market. They did not try to sell the house upon learning that it was in a SFHA because they did not think anyone would buy a house

in a flood zone. (Docket No. 217-3 at 17 (Deposition of Michael Harris).) The plaintiffs' sole remaining claim in this case is a negligent misrepresentation claim against CoreLogic.

## LEGAL STANDARD

Under Federal Rules of Evidence 401 and 402, only relevant evidence is admissible. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Even relevant evidence can be excluded if its probative value is "substantially outweighed by a danger of one of more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403

## ANALYSIS

CoreLogic seeks to exclude the expert testimony of Michael Tankersly, a real estate appraiser. The plaintiffs retained Tankersley to perform an extensive analysis comparing the value of the property "at the time of the loss" against what the property would have been worth at the same time, had the representations about its flood zone and Base Flood Elevation status been accurate. The 100+ page proffered testimony thus compares the value of the property as it existed on May 2, 2010—the date of the flood—i.e., in a flood zone and below the Base Flood Elevation, with the hypothetical value of the property on the same date, had the house not, in fact, been located in a flood zone and been found to be below the Base Flood Elevation.[1] The report concludes that the property would have been worth $520,000 dollars on May 2, 2010 with the knowledge that the house was in a flood zone and below the Base Flood Elevation. By contrast, it concludes that, absent the discoveries that the house was located in a flood zone and below the Base Flood

---

[1] Both estimates assume that the house was never damaged by the flood.

4

Elevation, the property hypothetically would have been worth $635,000 on that date. Tankersly relies on a variety of indicators specifically tied to the date of the flood, including the values of comparator homes on the market in May 2010. The plaintiffs seek to introduce Tankersly's testimony to establish that CoreLogic's negligent misrepresentation that the property was not in a flood zone caused them $115,000 in damages in the form of diminution in value of the property.

"[T]he usual measure of damages in a negligent misrepresentation action is the benefit of the bargain rule, that is, the difference between the actual value of the property received at the time of the making of the contract as compared to the value if the representations had been true." *Cary v. Evans*, 1986 WL 6642, at *3 (Tenn. Ct. App. June 12, 1986). "The application of this measure of damages compels the defendant to make good on the false representations. The measure of damages and the fixing of the value of the property are to be determined at the time of the transaction." *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 233 (Tenn. Ct. App. 1976). "The plaintiff has the burden of proving both values applied in the formula which measures his general damages, the actual value of the property at the time of the contract and the value of the property if it had been as it was represented to him." *Dixon v. Chrisco*, No. M2018-00132-COA-R3-CV, 2018 WL 4275535, at *8 (Tenn. Ct. App. Sept. 7, 2018) (quoting *Haynes*, 546 S.W.2d at 233–34).

In a recent opinion, the Tennessee Court of Appeals addressed at length the benefit of the bargain rule in the context of damages for fraudulent misrepresentation. *See Dixon*, No. M2018-00132-COA-R3-CV, 2018 WL at *7. The Tennessee Court of Appeals reversed an award based on the diminution in value of real estate allegedly caused by the defendant's misrepresentation. *Id*. at 8. The court held that the plaintiffs could not recover damages because they failed to

5

establish the actual value of the property at the time of the transaction, a necessary predicate for proving diminution in value under the benefit of the bargain rule. *Id*. The court explained:

> Neither party offered any evidence of the actual value of the property at the time of the transaction. Instead, both parties presented appraisals showing the purported market value of the property around two years after the transaction took place. "The plaintiff has the burden of proving both values applied in the formula which measures his general damages, the actual value of the property at the time of the contract and the value of the property if it had been as it was represented to him." *Haynes*, 546 S.W.2d at 233-34. Evidence of appraisals two years later will not suffice as evidence of the actual value of the property at the time of the transaction under the benefit of the bargain rule. *See* [*Flatford v. Williams*, No. C.A. 1201, 1989 WL 4419, at *2 (Tenn. Ct. App. Jan. 24, 1989)] (holding that the plaintiffs "failed to carry [their] burden" under the benefit of the bargain rule where the plaintiffs produced evidence of a sale of the house five years after the plaintiff's purchase of the home); *Haynes*, 546 S.W.2d at 233 (stating that evidence presented of the value of the house at the time of trial does not constitute the correct measure of damages under the benefit of the bargain rule); *see also In re Sallee*, 286 F.3d 878, 901 (6th Cir. 2002) (affirming the district court's holding under Kentucky law that "[t]he Bankruptcy Court's award . . . was clearly erroneous as it not only gave the Sallees the benefit of the bargain but also compensated them for economic changes affecting the value of the laundromat, independent of fraud" where the value of the laundromat four years later was used).

Under the rule articulated in *Dixon*, Tankersly's testimony does not use the appropriate reference date in calculating diminution in value. Tankersly's report, by its own terms, concerns only the estimated value of the property on May 2, 2010, the date of the flood. It does not purport to establish the actual or hypothetical value of the property at the time of the transaction, in August 2006. As a result, it does not use the property's hypothetical value on the date of the transaction as the baseline from which the alleged diminution in value is determined. Instead, the report's baseline is the hypothetical May 2010 value of the house in a world where the house was not damaged in the flood, was not in a flood zone, and was not below the Base Flood Elevation. Neither of the May 2010 values compared in the report is tethered in any way to the transaction itself, the event to which CoreLogic's alleged misrepresentation relates. Instead, its two points of comparison are two values tied to the date of the flood. Tennessee case law is clear that, in proving

6

diminution of value in misrepresentation claims, the relevant value of the property is fixed on the date of the transaction. *See Haynes*, 546 S.W.2d at 233.

Tankersly's proffered testimony creates a significant risk of jury confusion because it only deals with the diminution in value of the property in 2010. The testimony does not address the value of the property in 2006, the relevant date under Tennessee law. Courts have held that plaintiffs failed to meet their burden of proving the benefit of the bargain when presenting only evidence of property value similarly distanced from the date of transaction. *See Flatford*, No. C.A. 1201, 1989 WL 4419, at *2 (five years); *In re Sallee*, 286 F.3d at 901 (four years). Considering all of circumstances, the court finds that the chance of confusion outweighs any probative value the Tankersly report might have.

## **CONCLUSION**

For the foregoing reasons, CoreLogic's Motion *In Limine* to Exclude Expert Testimony of Michael V. Tankersly (Docket No. 232) is hereby **GRANTED**.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge